Thomas Hall was seized in fee of a tract of land, containing about 100 acres, in Rutherford, and on 24 September, 1823, leased it to William Owens for the term of thirty years thereafter rendering rent, and Owens entered into the premises. The bill charges, that the land consisted partly of cultivated and partly of wood land, and that the lease was for the purposes of farming only. In 1824, Hall devised the reversion to Thomas Coggins, and on 11 July, 1831, Coggins made to Thomas Dews, John McEntire and John Logan, a lease for thirty years (expressed to be), "to a certain extent, and for *Page 287 
certain purposes thereinafter to be named, of a certain tract of land, on which William Owens now lives, lying, etc., on the conditions following, viz: for the special and sole purpose of digging and searching for, and extracting the precious metals, if any be there found, on or from any and every part of the said premises"; and granting also such ways, woods, water, stone and timber for machinery, building, and other purposes, as might be found necessary and useful for prosecuting the business of opening and working mines on the premises. In consideration whereof, it was agreed between the parties, that Coggins should be entitled, equally with the three lessees, to the privilege of working in the mines so opened, and using the machinery so to be erected and draw a proportion of the metals according to the number of hands furnished by each provided that the number furnished Coggins should not exceed one-fourth — the whole, however, subject to the understanding and proviso, that it should be at the option of the lessees to erect such machinery as they thought requisite, or none at all, and to work or not to work mines on the premises, (372) as they might please. The bill states that the foregoing lease was made with the privity and consent of Owens; and that, shortly thereafter, the lessees entered on the premises and commenced working for gold, Owens then living on the land, and knowing of their operations and making no objection thereto, nor setting up any claim to the minerals in the land. The bill further states, that on 19 September, 1831, Logan purchased from Coggins the interest in the minerals, and right of working for gold and other metals to him reserved or secured by the previous lease of July; and that Owens was also present at that time, and made no objection to the contract, but, on the contrary, then contracted with Coggins for the purchase of the reversion in the premises, and took from him a covenant to convey the land to him in fee, expressly, however, subject to the rights of Logan, Dews and McEntire, under the said lease and contract; and that on the same day, Owens agreed in writing with Logan, that he might erect on the premises a grist-mill and use it for the term of thirty years, and at the end thereof remove the stones.
The bill then states, "that the said company soon ceased to work the mines; and it so remained until about the year 1840, when the defendants, Green, McDowell, and Lord, pretending some right so to do, opened mines on the land and took thereout four or five pennyweights of gold." It is then stated, that Dews, one of the lessees, died in 1838, having made a will and given all his estate to his father, Thomas Dews, the elder, one *Page 288 
of the plaintiffs; and that John Logan died in 1842, having made a will, in which he gave his interest in the premises to George W. Logan, and appointed him and John W. Logan the executors, who are the other plaintiffs.
The bill was filed in 1843 against McEntire, Green, McDowell and Ford, and prays that the three latter may discover what gold they have collected on the premises, and may be decreed to pay to the plaintiffs "such damages, rents (373) and profits, as may be just."
The defendant, Green, states that in 1840 he took a lease of the premises from William B. Owens, a son of William Owens, to whom the latter had made a deed in fee for them; that his lease was for the purposes of mining and was for five years, paying a rent of one-sixth part of the gold found; and that he admitted McDowell and Ford under him. The three then state, that they have paid the rents to Owens, and set forth the amount of the gold found, which, they say, will not more than compensate for the expenses of working. Green states, that before he took the lease, he had heard that some contract had been made by Coggins and Dews, Logan and McEntire, respecting the premises, and that he applied to McEntire to know what it was, and whether it was still in force, and was informed by him that there had been such a lease as is stated in the bill, but that, soon afterwards, the lessees, having, commenced operations, found the business unprofitable, and abandoned the lease. The defendants deny, that as far as they are informed and believe. William Owens was privy to the making of the lease or contract from Coggins and Dews, Logan and McEntire, or assented to the same before or afterwards, or agreed that they might open or work any mines under the same. The answer also states, that the defendants believe that Logan did make some verbal contract with Coggins for the purchase of his interest in the metals on the premises, under the previous lease, for some small price, which was paid in a barrel of flour and 70 gallons of whiskey; but, that, after the mines had been found not to be worth working as aforesaid, Logan rescinded the contract with Coggins, and took Coggins' bond for the value of the flour and whiskey, and afterwards received the money thereon.
The plaintiffs took the deposition of James Walker who says that he knows nothing of the lease to Dews, Logan and McEntire; but that he was present when Logan and (374) Coggins made a verbal agreement for the sale of Coggins' mineral interest to Logan, which was afterwards to be reduced to writing. The witness says he can not state *Page 289 
the time, farther than that it was between 1828 and 1831; but that William Owens was present, and made no objection; and that, some time afterwards, Logan called on him in Rutherfordton to witness that he was then paying Coggins for his interest in the mine, and let him have some liquor and flour.
All the other testimony for the plaintiffs relates to the proceeds of the mines worked by the defendants, Green, McDowell and Ford.
The other defendants, under an order, took the deposition of the defendant McEntire. He says that after the lease from Coggins, he and Logan worked on the land "two or three days for the purpose of testing it"; that Owens was opposed to it, but after a while consented that they might test outside of his field, and after they had done so, he consented for them to test it inside of the field; that for that purpose they sunk six or seven pits and found but little gold, and then abandoned all idea of working farther, and never went back; that he gave this information to the other defendants, and gave his consent that they should take a lease from Owens in 1840, but told them he would not act for Logan, who, he believed, still set up some claim.
It is further proved by two witnesses, Cole and Owens, that William Owens, when informed that the lease had been made by Coggins to Dews, Logan and McEntire expressed much dissatisfaction and would not agree that they should work on the premises even for the purpose of "testing" the mines; that those persons did, nevertheless, go on for a short time, until they become satisfied that there were no mines worth working, and then abandoned the premises; that Logan informed Coggins that they could make nothing, and insisted that he should, rescind, the contract, and that finally it was agreed to rescind, and that Coggins should pay Logan for certain (375) flour and whiskey which Logan had paid him on the contracts respecting the mines; that, in a few days afterwards, Coggins agreed to sell the premises in fee to Owens, and made him a deed, which appears to be dated 28 September, 1831, and that Logan, when he heard of it, applied to Owens to secure in his hands Logan's demand against Coggins for the flour and whiskey, but was informed that Owens had fully satisfied Coggins for the purchase-money, and thereupon he, Logan, took Coggins' own bond to himself for the amount.
This is a singular bill, seeking merely an account of the profits of working the mines by some of the defendants, and payment of shares thereof to the plaintiffs, without asking any relief in respect of the title of the land, and without bringing before the Court Coggins, under a contract with whom the plaintiffs claim, and under whom also the defendants claim; and without bringing in William Owens, on whose consent to their lease and contract they rely to give them efficacy, and under whom also the defendants claim, who have worked the mines. But, without noticing any objections arising from these circumstances, there are others upon the facts which are decisive against the bill.
It is objected first by the defendants' counsel, that the plaintiffs have failed to establish their title, as set forth, under the wills of Dews and Logan, two of the lessees; as they are not admitted in the answers, nor copies of them exhibited. This objection is, of course, fatal; but if there were nothing more in the cause, the Court would be disposed to consider it a case of surprise, and allow the proofs to be completed by exhibiting copies of the wills now. It would, however, be of no (376) avail to do so, as there are other grounds on which all relief to the plaintiffs must be denied. In the first place, as far as the assent of W. Owens (who was in possession under a previous lease for a term, of which 22 years were unexpired), is material to the validity of the subsequent lease, under which the plaintiffs claim, on which assent, indeed, the bill rests entirely the efficacy of that lease as against Owens, the evidence directly contradicts the statements of the bill. There is no proof whatever of such assent. Although Mr. McEntire, one of the parties to that lease, is examined, the plaintiffs do not even ask him a question upon the point; and it is clear from what he and the witnesses, Cole and Mrs. Owens, all say, that W. Owens did not know of the lease until after it had been made, and that he never did agree to it. It is true, Walker says, that Owens was present when Logan made a verbal agreement with Coggins, and made no objection. But that clearly relates to the agreement, subsequent and distinct from the lease between Coggins and Logan alone, for the sale of Coggins' mineral interest, as it is called, under the lease itself: for Walker speaks of the whiskey and flour, as being paid on the contract to which he deposes, which must refer to the subsequent transaction, since, for the original lease itself there was no such consideration as appears upon its face. McEntire says, indeed, that, after at first refusing, Owens consented to let them "test" the mines; which we suppose, means *Page 291 
that he allowed them to make some examinations with the view simply to ascertain, whether the land contained gold, or enough of it to be worth working. This he might have done, and, as we think, did, as one mode, and perhaps the easiest, of preventing disputes between the parties, as he would naturally expect, if it should turn out there was little gold, that he would have no more trouble upon the subject. That is very different from his yielding to them, as a matter of right under their lease, ingress upon the premises for the purpose of opening and working mines where they pleased. (377)
But, secondly, McEntire says, that, after they had satisfied themselves by "tests," that there was too little gold to make the business worth pursuing, the lessees from Coggins abandoned all idea of it; and there can be little doubt that they so informed Owens. It is natural to suppose so, after what had passed between them, as stated by this witness. But the other two, Cole and Mrs. Owens, state that Logan and Coggins expressly agreed to rescind. Whether they did it effectually or not, as between themselves, is not material. It is sufficient, that Logan and Coggins so represented to Owens, and that, under that belief, he purchased the premises from Coggins as unincumbered and unaffected by either of the previous contracts with Logan, or with him and his associates. Certainly contracts can not afterwards be set up with good faith against W. Owens, or any person claiming under him; and especially after lying by, without once setting up the claim, for nine years or thereabouts.