DORA V. BENJAMIN v. NORTHWESTERN FIRE & MARINE INSURANCE COMPANY.

GEORGE G. BENZ and Another v. DORA V. BENJAMIN.[1]

July 19, 1912.

Nos. 17,630, 17,631—(192, 193).

**Lease construed.**

> The owner leased certain real property for the term of one hundred years. Subsequently, before the expiration of the lease, he leased it to another for the term of one thousand years; the term thereof commencing immediately. The second lease is construed, and *held* to have been a grant in præsenti, and to vest in the second lessee the control of the property, and the right to the rents and profits issuing therefrom.

Actions in the district court for Hennepin county, one by Mrs. Benjamin to recover from the insurance company $200 advance instalment of rent due under her lease on March 8, 1911; and the other by the Benzes against Mrs. Benjamin to recover the advance instalment of rent due on June 8, 1911, which the insurance company had deposited with the clerk of that court. The answer of the insurance company in the first action admitted the making of the one hundred year lease and its assignment to the answering defendant; the making of the one thousand year lease to plaintiff subject to the former lease, and the sale of the premises, and assignment of the lease to the Benzes, demand by the Benzes and Benjamin for the payment and its willingness to pay to whomever might be entitled to it. The reply admitted the conveyance to the Benzes, and alleged that it was subject to her lease and her rights thereunder. The Benzes filed a complaint in intervention in the first action.

The cases were tried before Holt, J., who made findings and as conclusions of law ordered judgment in each case in favor of Mrs. Benjamin. Motions of the Benzes for new trials were denied, Dickinson, J.

[1] Reported in 137 N. W. 183.

From orders denying the motions for new trials, the Benzes appealed. Affirmed in each case.

*John F. Fitzpatrick* and *D. E. Dwyer,* for appellants.

*Simon Meyers,* for respondent Benjamin.

BROWN, J.

Levi M. Stewart in his lifetime owned certain real property in the city of Minneapolis, and in the year 1892 sold the building situated thereon to James H. Bishop and others, and at the same time, and as a part of the same transaction, executed to them a ground lease of the land for the term of one hundred years. The contract provided for a yearly rental of $1,000 for the first five years, payable quarterly in advance, and imposed also upon the lessees the obligation of paying all taxes and assessments against the property. It further provided that at the end of the first five-year period, and at or near the end of each succeeding five-year period, there should be a readjustment of the rent to be paid, in the manner and upon the basis therein mentioned. A subsequent readjustment was had, as so provided for, and at the time the controversy in this action arose the successors of the lessees were paying rent at the rate of $800 per year. The lease was duly recorded in the office of the register of deeds for Hennepin county on June 16, 1892. In March, 1906, the lessees, Bishop and others, assigned and transferred the lease, and all their rights and interests therein, to the Northwestern Fire & Marine Insurance Company, a corporation, defendant herein, and that company thereby assumed all obligations imposed by the contract upon their assignors. Since that transfer the insurance company has remained and still is in possession of the property, paying, as heretofore stated, rent at the rate of $800 per year, quarterly, and the lease is in full force and effect.

Thereafter, and in April, 1910, Stewart executed and delivered to plaintiff, Dora V. Benjamin, a second lease of the same premises for the term of one thousand years, at the annual rental of $900 per year, payable quarterly in advance. The lease was substantially like the former lease to Bishop, except that a readjustment of the rent to be paid was required to be made at intervals of ten years, which, as in the other lease, was to be based upon the valuation of the land exclu-

sive of buildings. By the terms of the prior lease, when the parties failed to agree upon terms of readjustment, the rent was fixed upon the basis of six per cent of the valuation of the property, determined in the manner therein provided. In the second lease the basis of the rent was five and one-half per cent of such valuation. So that in the course of a short time the second lessee would have the benefit of the difference. The second lease was expressly made subject to the prior lease, and provided for the payment of the stipulated rent of $900 per year in quarterly instalments, and also the payment of all taxes and assessments against the land. It was duly recorded in the office of the register of deeds. At the time this lease was executed, Stewart delivered to plaintiff a written document in and by which he directed all tenants then in possession of the premises under the prior lease to pay to plaintiff, Mrs. Benjamin, all rent and taxes accruing after March 7, 1910.

Stewart died on May 3, 1910, leaving a last will and testament by which he disposed of all his property. David D. Stewart and Charles Morse were duly commissioned executors of the will, and on April 18, 1911, under license of the probate court, sold and conveyed the property covered by the leases to John and Samuel Friedman. This conveyance by its terms was expressly made subject to all rights under the existing leases, which were, together with all rights thereby conferred upon the lessor, Stewart, assigned as part of the transaction of sale, to the Friedmans. The deed and lease assignments were duly recorded. Thereafter the Friedmans entered into an executory contract for a sale of part of the premises to one Samdal, for the expressed consideration of $303,000, which Samdal subsequently assigned to defendants George G. and Herman L. Benz. This contract was thereafter, on March 8, 1911, fully performed by the conveyance of the property to the Benzes; the executory contract and the deed of conveyance being expressly made subject to the existing leases, which were both assigned to them. The rent under the second lease fell due on the first days of March, June, September, and January, and fell due on the prior lease on the eighth days of these months.

After the death of Stewart, which occurred about six weeks after the execution of the second lease, Mrs. Benjamin regularly paid to

the executors the rent due under the second lease, namely, $225 per quarter. Some doubt arose on the part of the officers of the insurance company, tenant under the first lease, respecting the rights of Mrs. Benjamin, and they insisted upon paying the rent to the executors. The executors received it when due, on the eighth of the month, but immediately paid it over to Mrs. Benjamin. So that Mrs. Benjamin paid the rent due under her lease on the first of the month, and the executors returned to her on the eighth the amount paid by the insurance company. After the conveyance of the property to the Benzes, a further question arose as to the rights of Mrs. Benjamin, they insisting that she had no present estate or interest under her lease, and they demanded payment of the rent under the first lease direct to them. Mrs. Benjamin also demanded this rent, offering to pay to Benz, as she had theretofore paid to the executors, the rent called for by her lease. In view of these conflicting demands, the insurance company declined to pay it to either, and these actions were brought to recover the same, and to determine the respective rights and liabilities of the parties.

The action wherein Mrs. Benjamin is plaintiff involves the rent due March 8, 1911, and the action wherein George G. and Herman L. Benz are plaintiffs, and Mrs. Benjamin is defendant, involves the rent due June 8, 1911. The same questions are presented in each case. The trial court, upon the facts stated, held that Mrs. Benjamin had a present vested interest in the property, a right to collect the rent due from the insurance company, and judgment was awarded in her favor accordingly. A motion for a new trial in each action was made and denied, and the Benzes appealed.

1. The contention of appellant, aside from the errors urged in support of the motion for a new trial, is that the lease to Mrs. Benjamin vested in her no present estate or interest in the property, that she acquired at most rights to accrue in the future, and is not entitled to the rent due under the prior lease. This is founded upon the general rule that, where the owner of real property grants to one person the right of possession for a term of years and subsequently leases the property to another, to commence at the expiration of the first grant, no reversion or other present right passes to the second lessee,

except the right of possession in the future, leaving the lessor in control of the property, with the right to collect and receive the rents, issues, and profits accruing therefrom. The situation thus created is termed an interesse termini. 1 Taylor, Landlord & Tenant (9th Ed.) 72. Whether the rule applies to the case at bar is the principal question before us.

The question is solved, it would seem, by an answer to the further question whether the parties intended the second lease to go into effect presently, or that the operation thereof should be postponed until the expiration of the term of the first lease, then having eighty-two years to run. If we take into consideration the written document issued by Stewart simultaneously with the second lease, by which he directed the tenants to pay their rent to the second lessee, the question is entirely free from doubt. That document conclusively shows that a present vesting of reversionary rights in Mrs. Benjamin was intended. But counsel for appellant contend that the Benzes occupy the position of subsequent bona fide holders of the legal title, and, inasmuch as they had no notice of the document referred to before acquiring their title, they are not bound thereby. The document so directing the payment of rent to Mrs. Benjamin was not recorded, and it does not appear that notice thereof came to appellants prior to their purchase of the property.

We find it unnecessary to determine whether knowledge of the second lease, which was of record and subject to which appellants acquired their title, was constructive notice of Mrs. Benjamin's right to collect and receive the rent from the prior tenant, as evidenced by this separate writing. We dispose of the question presented from the legal effect of the lease itself and without reference to that document.

The validity of the second lease, as a matter of law, cannot seriously be questioned. The parties were competent to enter into the contract, and the forms of law were complied with. In the case of Cohen v. Suckno, 32 Misc. 689, 66 N. Y. Supp. 467, apparently holding to the contrary, the question was not very seriously considered, and the decision there made is not in our view of the matter supported on principle. No law was violated by the execution of the contract, and it must be held valid, whether it be construed as taking effect at the

time of its execution, or at the expiration of the prior lease. The important question is whether the second lease took effect and went into operation at the date of its execution; for, if it did not, then it is clear that Mrs. Benjamin has no claim to the rent due under the former lease.

The question is one of intention. Did the parties intend the second lease to go into effect as of the date of its execution? That such was the intention seems clear. The lease not only contains words of a present demise, presumptively a grant in præsenti (Potter v. Mercer, 53.Cal. 667), but expressly imposed present obligations and duties upon the lessee with respect to the property. Its language on the subject of the term of the lease namely, "to have and to hold said demised premises * * * from the first day of March, A. D. 1910, until the first day of March, A. D. 2910, being for the term of one thousand (1000) years," is clear and unambiguous. In addition to this specific designation of the term, the lease further obligates the lessee to pay all taxes and assessments against the property, "beginning with the taxes of 1909," and the sum of $900 a year as rent, "in equal, advance, quarterly payments, on the first day of the month of March, June, September, and December, in each and every year during the first ten (10) years of said term," and thereafter at the readjusted rate. It also imposes upon the lessee certain duties in reference to the care of the property, requires her to keep the same insured, maintain the same in a sanitary condition, and to indemnify and save harmless the lessor from the consequences of any default of compliance with the obligations thus imposed, and, further, "that during the whole of said term" the lessee shall not permit or tolerate the sale of intoxicating liquors upon the premises, and, finally, the lessee covenants and agrees "to pay to the said lessor personally at his office the rents hereintofore and hereby reserved, at the time and in the manner herein specified, without any demand, deduction, or delay." For any default in the performance of the obligations thus assumed by the lessee, the lessor may, at his option, terminate the lease.

A careful examination of the lease discloses no provisions in conflict or at variance with those recited, or from which it might fairly be inferred that the parties intended that the obligations imposed

were not to become presently binding upon the lessee. The language of the lease is too explicit to admit of a construction to the effect that the parties intended the lease to go into effect and operation eighty years in the future. To so construe it would reduce the contract to an absurdity, and render the transaction a meaningless ceremony. It is true that the lease was expressly made subject to the prior lease and all the rights thereunder, and that no right of present possession was granted the second lessee. But from this it does not necessarily follow that no rights were vested in the second lessee. It gave to the lessee the present control of the property, and imposed upon her present duties and obligations respecting its care, and in effect vested in her all rights in that respect which the lessor possessed. She could enforce a default of the prior tenant to perform the conditions of the first lease, cancel the same, and take possession of the property; or, if the first lessee vacated the property, the right of immediate possession would pass to her, and no proper construction of the contract would enable the lessor to prevent her full and free occupancy thereof. From all this it necessarily follows that the second lease was valid in law and operated to vest in Mrs. Benjamin rights in præsenti. We so hold.

We are not required to consider or determine the full extent of the rights and obligations of the second lessee. Whether it was within her power to comply with all the conditions of the contract is not here important. The only question now before us is whether she is entitled to the rent due under the first lease. We think the legal effect of the contract extended to her that right, and that such was the intention of the parties. The rental value of the property did not exceed $900, the amount required to be paid under the second lease, and it is clear that it was not the purpose of the transaction to give the lessor double rent for his property. In fact, since the second lease necessarily granted to the lessee the control and care of the property, it would seem logically to follow that the right to the rents, issues, and profits issuing therefrom passed by the operation of law to her. There can be no difference on principle between the situation here presented and one where the lessor, subsequent to the execution of the lease, conveys by deed the property to a third person. If in such a case there

119 M.—3.

be no reservation of the rents to accrue under the lease, they pass to the grantee by operation of law. Gale v. Edwards, 52 Me. 363; Pelton v. Place, 71 Vt. 430, 46 Atl. 63; 24 Cyc. 926. Any other result would be at variance and in direct conflict with the grant, namely, the title, and the exclusive use and enjoyment of the property, and all benefits issuing therefrom.

The precise question has not often arisen, so far as appears from the reports, but we are not entirely without precedent. In Logan v. Green, 39 N. C. 370, the court held that when "there is an outstanding lease for a number of years, and the reversioner makes a new lease to third persons to commence immediately, this is a vested estate; and, although the second lessees could not take possession of their term, inasmuch as the possession belonged to the first lessee, they would have a concurrent lease, and be entitled to all the rents issuing out of the term of the first lessee." The facts in that case were similar to those in the case at bar. See, also, where the same rule is applied, Pendergast v. Young, 21 N. H. 234. This conclusion follows logically from the construction we give the lease, for no other result would be consistent with the legal effect of the transaction. We therefore hold that the second lessee is entitled, so long as her lease remains in force, to collect and receive the rent due under the first lease.

2. In view of this result, many of the assignments urged in support of the motion for a new trial become immaterial. We have examined them all, however, and find therein no error of a character to justify a new trial.

Order affirmed in each case.