# FIRST MINNEAPOLIS TRUST COMPANY AND ANOTHER v. LANCASTER CORPORATION.[1]

December 31, 1931.

No. 28,672.

[1]Reported in 240 N. W. 459.

122

*Ueland & Ueland*, for appellant.

*A. R. Chesnut* and *Kingman, Cross, Morley & Cant*, for respondents.

WILSON, C. J.

Defendant appealed from a judgment in an action of forcible entry and detainer.

On March 8, 1920, Douglas A. Fiske, being the owner in fee, leased certain premises in Minneapolis to William C. Redlin for 100 years. The lessee's interest in the lease, through mesne conveyances, has been acquired by defendant.

On September 1, 1923, Douglas A. Fiske and his wife signed and acknowledged in form a deed of trust conveying the lessor's interest in the premises to Douglas A. Fiske and Wells-Dickey Trust Company as joint trustees, under the terms of which trust Mrs. Fiske was to receive an annual income of $12,000 during her life. The rights of other beneficiaries under the trust are not now important. The deed was executed by Wells-Dickey Trust Company on October 12, 1923. On October 10, 1923, Mr. and Mrs. Fiske were divorced.

Subsequently Wells-Dickey Trust Company consolidated with the Minneapolis Trust Company. Minneapolis Trust Company later

consolidated with another financial institution into First Minneapolis Trust Company. ·Mr. Fiske died in January, 1928.

Rents maturing under the lease July 1, 1930, October 1, 1930, and January 1, 1931, were not paid. There was also a default in payment of taxes maturing May 31 and October 31, 1930.

On January 23, 1931, plaintiff First Minneapolis Trust Company as such trustee executed to William C. Redlin a second lease on the same premises for a term of 100 years from July 1, 1930. This lease was made subject to the prior lease and contained in form an assignment to the lessee of the right to enforce the payment of delinquent rent and taxes as provided in the former lease.

Thereafter plaintiff trustee and said Redlin joined in serving a 60-day notice, provided in the first lease, to terminate the first lease on account of said defaults. There were no results. This action followed, and plaintiff prevailed.

■ *Misjoinder of parties plaintiff.* Plaintiff trustee and William C. Redlin prosecuted this action jointly. Redlin held the second lease, which seems to be a "concurrent" lease, meaning that the owner of the reversion under the earlier lease gave him the second lease before the termination of the first and by its terms transferred to him the unpaid delinquent rents and the rights to enforce the same. This also gave Redlin the right to claim the benefit of the covenants of the first lease and the power to give notice to terminate. We are of the opinion that since defendant did not raise the question of misjoinder of parties plaintiff by demurrer or answer the question was waived. G. S. 1923 (2 Mason, 1927) § 9252.

■ G. S. 1923 (2 Mason, 1927) § 8621, provides:

"No contract between husband and wife relative to the real estate of either, or any interest therein, * * * shall be valid."

Defendant asserts that the deed of trust was void because in violation of the foregoing statute.

Of course one spouse cannot convey real estate directly to the other. Defendant's argument rests upon the fact that the deed is dated and acknowledged by husband and wife on September 1, 1923, a time before they were divorced. It is also said that as a

bargain only the husband and wife were involved. The argument which rather assumes a delivery on that date is not persuasive.

The deed of trust recites:

"That in consideration of the sum of One ($1.00) dollar paid to the parties of the first part by the parties of the second part, the receipt of which is hereby acknowledged, and of the acceptance by the second parties of the Trust created hereunder, and second parties' agreement to act as Trustees hereunder, the said parties of the first part do hereby grant, bargain, sell and convey to the parties of the second part and their successors, Forever," etc.

The sixth finding of fact is as follows:

"That said trust deed was executed and acknowledged by the said Alice V. Fiske and the said Douglas A. Fiske on the first day of September, 1923, but the same was not executed or acknowledged by the Wells-Dickey Trust Company until the 12th day of October, 1923, when the said trust deed was executed and acknowledged by the said Wells-Dickey Trust Company and the originals thereof were then delivered by said Wells-Dickey Trust Company."

The quoted language indicates that the agreement of Wells-Dickey Trust Company to act as trustee was one of the considerations for the execution and delivery of the conveyance. We cannot assume otherwise. It may be that one or both of the parties would not have created the trust unless this trust company would so serve.

In the interval the divorce was granted. The parties made a stipulation now in the record and printed in appellant's reply brief. This stipulation made financial provision for Mrs. Fiske in case she showed herself entitled to a divorce, and the court found the provision to be reasonable and fair. This stipulation provided for this trust. It is dated September 25, 1923, and it recites:

"The parties hereto agree to forthwith sign and acknowledge in duplicate a Trust Deed, a copy of which is hereto attached and marked Exhibit "A," and deliver the same to Ell Torrance of Minneapolis, Minnesota, to be held by him in escrow, and, in the event of the plaintiff procuring a Decree of Absolute Divorce as asked

for by her in said action, then, in such event, the said Ell Torrance is to deliver such duplicate copies to the Wells-Dickey Trust Company for execution by it as one of the Trustees, and shall then deliver one of the duplicate originals of such Trust Deed to the plaintiff and to the defendant respectively.

"In the event, however, that a Decree of Absolute Divorce is not granted by the Court, and entered in said action, then, in such event, but not otherwise, the said Ell Torrance is to destroy both of the originals of said Trust Deed, and such Trust Deed shall in such event be void and of no effect whatsoever."

We may assume that the parties performed their agreement. We cannot account for the date of the deed and the date of their acknowledgment being September 1, 1923, and the stipulation 24 days later calling for them to "forthwith sign and acknowledge." But that is not controlling. Obviously it was not the intention of the parties that this deed would become effective unless Wells-Dickey Trust Company executed it and unless an absolute divorce was granted. Defendant's brief says that it is presumed that a deed is delivered on its date; but here the records refute such presumption. The stipulation provides that if an absolute divorce was not granted the deed was to be destroyed. Such possible consequence must refute the claim of delivery as to anyone.

The deposit with Ell Torrance was in escrow. It was to be held until the consummation of the specific conditions, that is, until the happening of the two contingencies; until such contingencies do happen the title does not pass under a deed so held. That is why it is put in escrow. If title passed when the deed was delivered in escrow, the deed might just as well be delivered to the grantee. The title of the grantee dates only from the time of delivery from the hands of the person holding it in escrow, unless the intention of the parties to the contrary is shown. Andrews v. Farnham, 29 Minn. 246, 13 N. W. 161; Lindley v. Groff, 37 Minn. 338, 34 N. W. 26; Kammrath v. Kidd, 89 Minn. 380, 95 N. W. 213, 99 A. S. R. 603. Of course the parties here did not wish title to pass until the contingencies happened. When the title did pass, October 12, 1923,

Mrs. Fiske was not the wife of Mr. Fiske. Her execution of the deed was not then required. Its presence was harmless. Her participation in the signing and the acknowledging of the deed was perhaps due to caution; and evidence of her good faith in the stipulation.

The rule that a trust will not fail for want of a trustee is not applicable. It is plain, first, that until the divorce was granted the time was not yet ripe for a trustee; and, if one was to be had, intent here called for the trustee's acceptance. Defendant argues in the brief that if Mrs. Fiske had died the day after the divorce and the day before the acceptance of the deed of trust by the trustee, it could not have been contended that the deed would have been valid. But in such case necessity requires a resort to fiction. Lindley v. Groff, 37 Minn. 338, 34 N. W. 26. It would also seem that if we held otherwise defendant would find a barrier in a curative act. L. 1925, p. 431, c. 342, 2 Mason, 1927, § 8199-1; Wistar v. Foster, 46 Minn. 484, 49 N. W. 247, 24 A. S. R. 241.

■ It is claimed also that the trust deed was invalid because entered into to facilitate a divorce.

It is dated September 1, 1923, and delivered as indicated, October 12, 1923. The complaint in the divorce action was verified August 31, 1923. The summons therein was dated September 1, 1923. The summons and complaint were served September 19, 1923. Unless Mrs. Fiske changed her residence, the parties resided in Minneapolis in Hennepin county. The action was brought in Beltrami county. The findings of fact in the divorce case state that Mrs. Fiske was and for more than a year had been a resident in the state of Minnesota; but it is silent as to the county of her residence. Presumably she testified that she lived in Beltrami county. A judgment of divorce cannot be set aside in a collateral attack upon this record wherein the only evidence that Mrs. Fiske did not so reside in Beltrami county at the time of the divorce is the unsworn statement from one of plaintiff's counsel, made 11 years later, that Mrs. Fiske then resided in Minneapolis. It may well be doubted whether counsel in making the answer intended to

be technically accurate. But assuming without deciding that Mrs. Fiske lived only in Minneapolis and never resided in Beltrami county, the fact remains that the trial court did not so find; and the solemn judgment of a court granting a divorce is not to be lightly set aside. The presumption has not been overcome, and the burden was upon the defendant. '

In the case of Cochran v. Cochran, 93 Minn. 284, 285, 101 N. W. 179, this court said:

"If the plaintiff in an action for a divorce be a resident of the state, the fact that the action is brought in a county in which the plaintiff does not reside is not jurisdictional."

This statement was purely dicta. The trial court found that plaintiff was a resident of the county in which she prosecuted the action, and we held that the evidence supported that finding. That ended the question. Searles v. Searles, 140 Minn. 385, 168 N. W. 133, is also characterized by a similar finding.

The deed of trust did not facilitate a divorce. It did not induce a divorce, was not a fraud upon the court, but related to a situation permissively planned, where possible, subject to the approval of the court, for the laudable purpose of properly providing for the wife and children. The fact that defendant withdrew his answer after the agreement was made is without significance. It may be that he had no defense, but an answer was proper and perhaps necessary in relation to the amount of alimony. The stipulation involving the trust deed was necessarily negotiated and executed in the face of a move for a divorce, but it must here be held to have been .because thereof—an incident thereto, not an inducement thereof. Such procedure is a common and well recognized practice. Having the approval of the trial court that the provision for Mrs. Fiske was "fair, reasonable and adequate," the agreement stands before us presumptively valid and substantially unimpeached.

■ The consolidation of the financial institutions resulting in the plaintiff First Minneapolis Trust Company was had under and pursuant to L. 1925, p. 142, c. 156, being 2 Mason, 1927, §§ 7699-5 to 7699-11. · Section 5 of said c. 156 is as follows:

"Upon the consolidation of any such corporation, with any one or more corporations, into a consolidated corporation, as herein provided, the corporate existence of each former corporation shall be merged into that of the consolidated corporation, and all and singular its rights, privileges, and franchises, and its right, title and interest in and to all property of whatsoever kind, whether real, personal, or mixed, and all things in action, and every right, privilege interest or asset of conceivable value or benefit then existing which would inure to it under an unmerged or unconsolidated existence shall be deemed fully and finally transferred to and vested in the consolidated corporation without further act or deed and such last mentioned corporation shall have and hold the same in its own right as fully as the same was possessed and held by the former corporation from which it was, by operations of this act, transferred. Its rights, obligations, and relations to any person, creditor, depositor, trustee, or beneficiary of any trust, shall remain unimpaired and the corporation into which it shall have been consolidated shall succeed to such relations, obligations, trusts, and liabilities and shall execute and perform all such trusts in the same manner as though it had itself assumed the relation or trust, or incurred the obligation or liability; and its liabilities and obligations to creditors existing for any cause whatsoever shall not be impaired by such consolidation, nor shall any obligation or liability of any stockholder in any corporation, which is party to such consolidation, be affected by any such consolidation, but such obligations and liabilities shall continue as fully and to the same extent as existed before such consolidation. The consolidated corporation shall become, without further act or deed, the successor of the consolidating corporations in any and all fiduciary capacities, in which each such consolidated corporation may be acting at the time of such consolidation, and shall be liable to all beneficiaries as fully as if such consolidating corporations had continued its separate corporate existence. If any consolidating corporation shall be nominated and appointed or shall have been nominated or appointed as executor, guardian, administrator, agent or trustee, or in any

other trust relation or fiduciary capacities in any will, trust agreement, trust conveyance or any other conveyance, order or judgment of any Court, or any other instrument whatsoever prior to such consolidation, (even though such will or other instrument shall not become operative or effective until after such consolidation shall have become effective) every such office, trust relationship, fiduciary capacity, and all of the rights, powers, privileges, duties, discretions, and responsibilities so provided to devolve upon, vest in, or inure to the corporation so nominated or appointed, shall fully and in every respect devolve upon, vest in, and inure to, and be exercised by the consolidated corporation, whether there be one or more successive mergers or consolidations."

Defendant attacks the validity of this law upon the claim that it impairs the obligation of contract; and constitutes a legislative invasion of judicial function, the appointment of a trustee. This contention is grounded on Worcester County Nat. Bank, Petitioner, 263 Mass. 444, 162 N. E. 217, reviewed in 279 U. S. 347, 49 S. Ct. 368, 73 L. ed. 733, 61 A. L. R. 987; but in that case it was held that the legislative intent was to terminate the corporate existence of the consolidating institutions, and that the consolidated institution was necessarily a new entity which could only succeed to the office of the trust by virtue of the new judicial appointment. The very point fatal to the Worcester county case is not in this case because our statute shows a contrary legislative intent. Indeed, under our statute the consolidating institutions continue their corporate existence in merged form in the consolidated corporation.

The case of State v. Wood, 173 Minn. 406, 217 N. W. 360, is not inconsistent with the views now expressed. There we were considering the rights of the creditor whose claim was evidenced by the original obligation and assumed by the consolidated corporation.

The original corporate existence originates in the power of the legislature. That same power may authorize the change as contemplated by our statute; it has not substituted any new successor fiduciary at all, but merely permits the old one to continue under a new name and then within another corporate form. Under our

statute the corporate existence of each former corporation shall be merged into that of the consolidated corporation. The blood of the former flows into and through the veins of the latter. The amalgamation is much like the mixture of oil and vinegar. In mineralogy such a mixture is called a conglomerate. The constituents of the new corporation have not lost their original identity, which continues as one of the characteristics of the new corporation. It will be noted that the statute says:

"The corporate existence of each former corporation shall be merged into that of the consolidated corporation, * * *. Its rights, obligations, and relations to any person, creditor, depositor, trustee, or beneficiary of any trust, shall remain unimpaired * * *."

Hence the consolidated institution succeeds to all fiduciary capacities in which the component institutions would act or would become entitled to act had there been no consolidation.

Persons who have named corporations as trustees in their trusts are presumed to know that consolidations and mergers are possible; that officers and stockholders are constantly changing; and hence they are presumed to have contemplated an assent to such corporate changes and their consequences.

We are of the opinion that the statute is within the power of the legislature and is constitutional. The authorities seem to support our conclusion. C. & E. Ill. R. Co. v. Doyle, 256 Ill. 514, 100 N. E. 278; Central University of Ky. v. Walters' Exrs. 122 Ky. 65, 90 S. W. 1066; 15 Minn. L. Rev. 817; In re Bergdorf's Will, 206 N. Y. 309, 99 N. E. 714; Chicago T. & T. Co. v. Zinser, 264 Ill. 31, 105 N. E. 718, Ann. Cas. 1915D, 931; Mueller v. First Nat. Bank, 171 Ga. 845, 156 S. E. 662; Mercantile Trust Co. v. San Joaquin Agric. Corp. 89 Cal. App. 558, 265 P. 583; In re Barnett's Estate, 97 Cal. App. 138, 275 P. 453; First Nat. Bank v. Harry E. Chapman Co. 160 Tenn. 72, 22 S. W. (2d) 245; First Wisconsin Trust Co. v. Johnson, 173 Wis. 564, 181 N. W. 828; Central R. & B. Co. v. Georgia, 92 U. S. 665, 23 L. ed. 757.

■ The claim is that a right of reëntry is not assignable; that it cannot be enforced by any person except the grantor and his heirs; that it is destroyed by a transfer of the reversion, and after such transfer can be enforced neither by the transferee nor by the transferor or his heirs. It is asserted that Redlin could act under the right of reëntry only as to covenants and conditions broken after the assignment, which was January 23, 1931. It is also suggested that neither of plaintiffs could serve the 60-day notice.

Defendant's claim that Redlin could act only under the right of reëntry, if that were important here, as to defaults occurring after January 23, 1931, is sufficiently answered by the fact that the default which would support an action under the right of reëntry did not become complete until the expiration of 60 days after February 2, 1931, which was the date of the service of the 60-day notice.

It follows that Redlin was in a position to serve the 60-day notice.

■ The claim that the First Minneapolis Trust Company did not have a reversionary interest in the property and could not exercise the right of reëntry or serve the 60-day notice is unsound. It owned the fee and was vitally interested in the payment of the taxes as well as in the protection of its rental income therefrom. See Central U. T. Co. v. Blank, 168 Minn. 312, 210 N. W. 34; Davidson v. Minnesota L. & T. Co. 158 Minn. 411, 197 N. W. 833, 32 A. L. R. 1418.

■ Plaintiff's right to prosecute this action is not based upon the right of reëntry contained in the lease.

Where a tenant is in default in the payment of rent, the landlord's right of action for forcible entry and unlawful detainer is complete. G. S. 1923 (2 Mason, 1927) § 9149; Spooner v. French, 22 Minn. 37; Wright v. Gribble, 26 Minn. 99, 1 N. W. 820; Woodcock v. Carlson, 41 Minn. 542, 43 N. W. 479; Suchaneck v. Smith, 45 Minn. 26, 47 N. W. 397; Lloyd v. Secord, 61 Minn. 448, 63 N. W. 1099; Caley v. Rogers, 72 Minn. 100, 75 N. W. 114; Seeger v. Smith, 74 Minn. 279, 77 N. W. 3.

Such action may be prosecuted by the lessor or his grantee. Alworth v. Gordon, 81 Minn. 445, 84 N. W. 454; Fisher v. Heller, 166 Minn. 190, 207 N. W. 498; see also Burton v. Rohrbeck, 30

Minn. 393, 15 N. W. 678; Benjamin v. N. W. Fire & Marine Ins. Co. 119 Minn. 27, 137 N. W. 183, 41 L.R.A.(N.S.) 395. This in no way conflicts with G. S. 1923 (2 Mason, 1927) § 8187, which relates to actions which may be brought by a landlord when a subsisting right of reëntry exists. Whether such right exists or not is not controlling upon the right to prosecute a statutory action for unlawful detainer. The record would indicate that the notice required by the first lease which was served would meet the requirements of § 8187, were that question here important.

But the point is that the language of this lease cannot be construed as so limiting any action or proceeding of any character upon the part of the landlord until 60 days after giving such notice. It merely provides that upon default "the lessor, in addition to all other remedies provided by this lease, or now or hereafter provided by law, may at his option, give the tenant notice in writing that he declares this lease and all rights thereunder granted to the tenant terminated," unless the tenant shall reinstate himself under the conditions expressed in the lease. Obviously the lessor was not obliged to exercise his option to terminate the lease unless he should see fit so to do. We here find the defendant urging that the landlord must resort to the drastic measure of terminating the lease, claiming that he has not done so, and claiming further that he has not the power to do so. If the landlord should choose not to exercise this option and to be more lenient toward the lessee than he might have been and institutes this particular proceeding wherein the lessee has the right under the statute to pay and retain possession, the lessee ought not be heard to complain.

Indeed, in such a proceeding as this it is not contended that the lease is terminated, and it is not upon that theory that such an action founded upon the failure to pay rent is prosecuted. In this kind of a proceeding the landlord seeks primarily to secure payment of the rent due; and, as an alternative, in case the rent is not paid, to secure possession of the premises. G. S. 1923 (2 Mason, 1927) § 8187, provides that the tenant may at any time before possession is delivered to plaintiff pay up and retain possession.

The provisions in the lease so giving the landlord such optional right to terminate it on 60 days' notice in no way preclude the lessor or his assigns from pursuing his remedy in forcible entry and detainer for nonpayment of rent. Hunter v. Porter, 10 Idaho, 72, 77 P. 434.

Affirmed.

