390

Civil No. 389.

District Court, D. Minnesota, Fourth
Division.

July 27, 1942.

Grant W. Anderson, of Minneapolis, Minn., for plaintiff.

Victor E. Anderson, U. S. Atty., and Linus J. Hammond, Asst. U. S. Atty., both of St. Paul, Minn., for the United States.

JOYCE, District Judge.

This matter came on for trial before the court on the 20th day of April, 1942. Mr. Grant W. Anderson appeared on behalf of the plaintiff, and Mr. Linus J. Hammond, Assistant United States Attorney for the District of Minnesota, appeared on behalf of the defendant. Evidence was introduced, arguments made, briefs thereafter filed, and the court being advised, makes the following Findings of Fact and Conclusions of Law:

### Findings of Fact.

The above entitled action is brought for the purpose of recovering from the defendant $3,776 of capital stock tax erroneously paid by plaintiff on the 30th day of July, 1935, together with interest thereon at the rate of six per cent per annum from the 30th day of July, 1935.

On and prior to the 30th day of December, 1933, The Minnesota Loan and Trust Company (hereinafter called the "Trust Company") was a corporation organized and doing business under the laws of the State of Minnesota. The Northwestern National Bank of Minneapolis, Minn. (hereinafter called the "National Bank"), was a national banking association organized and doing business under the National Bank Act of the United States.

Prior to the consolidation the two corporations were affiliated. Legal title to the stock of the Trust Company was held by certain trustees under a trust agreement. In said agreement it is provided, in substance, that the stock of the Trust Company shall be continuously owned by the persons who shall from time to time be the shareholders of record of the National Bank. Each stock certificate issued by the National Bank contained an appropriate endorsement to the effect that the owner thereof is beneficially interested, in common with the other stockholders of the Bank, in a pro rata amount of the stock of the Trust Company.

In the interim between the close of business on Saturday noon, December 30, 1933, and the opening of business on Tuesday morning, January 2, 1934, the National

Bank and the Trust Company were consolidated, under the charter of the National Bank, pursuant to a consolidation agreement. The name of the consolidated corporation was Northwestern National Bank and Trust Company of Minneapolis.

In Section 5 of the Consolidation Agreement it is provided that as its contribution to the capital, surplus and undivided profits of the consolidated corporation the National Bank shall furnish net assets in an amount not less than $4,600,000 and the Trust Company shall contribute net assets in an amount not less than $2,500,000. The amount of net assets actually contributed by the Trust Company to the consolidated corporation was $3,776,519.34.

Section 8 of the Consolidation Agreement, plaintiff's Exhibit "A", states when the consolidation shall be effective. It states as follows: "The consolidation shall become effective when it shall have been ratified and confirmed by the affirmative vote of the shareholders of each of said associations owning at least two-thirds of its capital stock outstanding, at a meeting to be held pursuant to a call of the Directors heretofore made, and shall have been approved by the Comptroller of the Currency of the United States."

Approval of the Comptroller of the Currency and ratification of the Consolidation Agreement by the shareholders of the two corporations occurred in the following order:

First. On September 11, 1933, E. H. Goff, Deputy Comptroller of the Currency, wrote a letter to Mr. Theodore Wold, Vice President of the National Bank, in which among other things he stated: "You are advised that the plan of consolidation has been approved by the Comptroller of the Currency."

Second. The Consolidation Agreement is dated, executed and acknowledged on September 29, 1933.

Third. On December 30, 1933, the shareholders of the Trust Company duly ratified and confirmed the agreement.

Fourth. On December 30, 1933, the shareholders of the National Bank duly ratified and confirmed the agreement.

Fifth. On January 2, 1934, the Comptroller of the Currency issued a formal certificate, plaintiff's Exhibit "B", in which he certified that the National Bank and the Trust Company "have been consolidated * * * and that the consolidation is hereby approved."

Sixth. On January 25, 1934, the Commissioner of Banks of the State of Minnesota issued a certificate in which he certified: "That the Minnesota Loan and Trust Company has now become consolidated with * * * and that pursuant to Chapter 348, Minnesota Session Laws of 1931, its corporate existence as a trust company is merged into that of the consolidated banking institution * * *."

Under date of the 31st day of August, 1934, pursuant to the provisions of Section 701 of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 787, the consolidated corporation made its 1934 return of capital stock tax and declared that the value of its entire capital stock as of the close of its last income tax taxable year (December 31, 1933) was "None".

Thereafter and under date of the 29th day of July, 1935, pursuant to said Revenue Act of 1934, the consolidated corporation filed its 1935 return of capital stock tax for the year ending December 31, 1934. In Item 10 of said Exhibit "G" plaintiff reported that the adjusted declared value of its capital stock as of December 31, 1934, was $7,574,348.73. In arriving at this adjusted declared value plaintiff included as an addition to its original declared value the net assets in the amount of $3,776,519.34 which the Trust Company had contributed to the consolidated corporation. Tax was paid by plaintiff based on such report in the amount of $7,574.00.

Thereafter plaintiff became convinced that it was an error on its part to have included the said sum of $3,776,519.34 as an addition to its original declared value, and that by reason of that fact it had paid $3,776 of capital stock tax in excess of the amount which it should have paid. Thereupon, on March 30, 1939, plaintiff filed a claim for refund of the excess tax paid as aforesaid, which claim contained the following statement: "On the 2nd day of January, 1934, the Minnesota Loan and Trust Company of Minneapolis, a subsidiary of this taxpayer, was liquidated by the claimant. Through error this taxpayer increased its original declared value as of June 30, 1934, by $3,776,519.34, which represents the net amount taken over by the parent company, the taxpayer."

On July 10, 1939, within the statutory period during which an original claim for refund could have been filed, and in response to a request from the office of the

Commissioner of Internal Revenue, plaintiff filed a supplemental statement with the Commissioner of Internal Revenue, acknowledging the fact that the Trust Company was not a subsidiary of the National Bank, and fully informing the Commissioner as to the nature of the affiliation between the two institutions and the terms and conditions of the consolidation agreement. The claim for refund was rejected on July 26, 1939. This action was commenced on October 24, 1940.

The law of the State of Minnesota (Sec. 7699-9 and Sec. 7699-9½, Mason's Minn.St. 1927 and Supp.1940), that being the sovereign state under whose laws the Trust Company was organized, expressly provides that upon a consolidation, such as occurred in the instant case, "the corporate existence of each former corporation shall be merged into that of the consolidated corporation."

That portion which is pertinent to this action, of Section 34a, 12 U.S.C.A., that being the Federal statute under which the consolidation was accomplished, reads as follows: "Upon such a consolidation, or upon a consolidation of two or more national banking associations under section 33 of this title, the corporate existence of each of the constituent banks and national banking associations participating in such consolidation shall be merged into and continued in the consolidated national banking association and the consolidated association shall be deemed to be the same corporation as each of the constituent institutions."

That portion of the Consolidation Agreement which deals with the legal effect of the consolidation upon the corporate existence of the consolidating banks reads as follows: "at the date of consolidation, the corporate existence of each consolidating association shall be merged into that of the consolidated association; and all assets, liabilities and relationships, of whatsoever kind or nature, of each of the consolidating associations existing at the date of consolidation, shall continue in the consolidated association."

Before the consolidation, the constituent National Bank and the constituent Trust Company were each subsidiaries of Northwest Bancorporation, the parent company, in excess of 98½% of the stock of each of the constituent banks being owned by said parent corporation. After the consolidation was completed, the same percentage of the stock of the consolidated corporation was still owned by the same parent corporation, and no new assets or new capital of any kind had been added.

### Conclusions of Law.

I. That Northwestern National Bank and Trust Company of Minneapolis, the plaintiff herein, is a consolidated corporation, and the corporate existence of The Northwestern National Bank of Minneapolis, Minn., the constituent National Bank, and the Minnesota Loan and Trust Company, the constituent Trust Company, have been merged into and continued in the plaintiff, and the plaintiff is the same corporation as each of its constituents.

II. That the 1934 return of capital stock tax for the year ending June 30, 1934, filed by Northwestern National Bank and Trust Company of Minneapolis on the 31st day of August, 1934, was the return of the consolidated corporation and reported the declared value of the capital stock as of December 31, 1933, of each of the constituent companies; and that in its 1935 return of capital stock tax for the year ending June 30, 1933, the plaintiff herein erroneously reported that capital assets which passed from the Trust Company to the consolidated National Bank in the amount of $3,776,519.34 were "paid in surplus and contributions to capital" within the meaning of Section 701 (f) of the Revenue Act of 1934.

III. That by reason of such erroneous statement in said capital stock tax return, plaintiff herein erroneously paid taxes in the amount of $3,776 in excess of the amount which it was legally obliged to pay.

IV. That plaintiff is entitled to the relief prayed for in its complaint.

### Memorandum.

The foregoing Findings of Fact set forth in detail the series of events upon which this controversy rests. The issues involved are as follows:

1. Did the net assets in the amount of $3,776,519.34 contributed by the Trust Company to the consolidated corporation constitute "paid in surplus and contributions to capital" within the meaning of Section 701 of the Revenue Act of 1934, which should have been treated as an addition to the original declared value of its capital stock?

2. If such a contribution did occur, then did it occur during the year 1933 or did it occur during the year 1934?

Before the consolidation of the Northwestern National Bank and the Minnesota Loan & Trust Company, all of the trust company's stock was beneficially owned through trustees by the identical persons who owned the bank stock, 98½% of which latter stock was in turn owned by the Northwest Bancorporation. So that what was here undertaken was a consolidation of two subsidiaries of a parent corporation. When the consolidation was effected the substance of the situation was not changed—stockholders continued their ownership of the same property as they had theretofore, with a change only in the evidence of ownership. The assets remained the same but were now owned by the consolidated company instead of the constituent companies. Those who were officers and directors of the constituent companies became officers and directors of the consolidated company. The successorship was by operation of law whereby the form was changed but not the substance.

The authority for the Trust Company consolidating or merging with the National Bank is found in Chapter 348, Session Laws of Minnesota 1931, Sec. 7699-9½ Mason's Minnesota Statutes 1940 Supp., which provides that upon such a consolidation the corporate existence of the Trust Company shall be merged into that of the consolidated banking corporation to the same extent and with the same effect provided in Section 7699-9 of the 1927 Minnesota statutes relating to the consolidation of two or more state banking or trust companies. The Minnesota Supreme Court has construed these statutes in First Minneapolis Trust Company v. Lancaster Corporation, 185 Minn. 121, 240 N. W. 459, 463, wherein among other things the court said:

"Indeed, under our statute the consolidating institutions continue their corporate existence in merged form in the consolidated corporation. * * *

"Under our statute the corporate existence of each former corporation shall be merged into that of the consolidated corporation. The blood of the former flows into and through the veins of the latter. The amalgamation is much like the mixture of oil and vinegar. In mineralogy such a mixture is called a conglomerate. The constituents of the new corporation have not lost their original identity which continues as one of the characteristics of the new corporation. It will be noted that the statute says: 'The corporate existence of each former corporation shall be merged into that of the consolidated corporation.'"

The applicable Federal law is found in Section 34a, 12 U.S.C.A., as amended in 1933. This statute provides that: "Upon such a consolidation, or upon a consolidation of two or more national banking associations under section 33 of this title, the corporate existence of each of the constituent banks and national banking associations participating in such consolidation shall be merged into and continued in the consolidated national banking association and the consolidated association shall be deemed to be the same corporation as each of the constituent institutions."

■ Determination of the status of the constituent companies after the merger seems to hinge, according to the authorities, on the question, "Was the consolidated corporation technically and legally the same corporation as its constituent companies?". See Helvering, Commissioner, v. Metropolitan Edison Co., 306 U.S. 522, 59 S.Ct. 634, 83 L.Ed. 957; New York Central R. Co. v. Commissioner, 2 Cir., 79 F.2d 247; Pennsylvania Company v. Commissioner, 3 Cir., 75 F.2d 719; Western Maryland R. Co. v. Commissioner, 4 Cir., 33 F.2d 695, 698. Under both the State and Federal statutes applicable to the situation, and the intent of the parties as evidenced by the terms of the consolidation agreement, I cannot conclude otherwise than as stated by the court in Western Maryland R. Co. v. Commissioner, supra, "after all, while there is a technical legal difference between the old and the new corporations, they are the same as a practical matter * * *"; that the plaintiff is the same corporation as each of its constituent companies and the corporate existence of each of the constituent companies was continued in the plaintiff.

■ With reference to the contention of the Government that the claim before the court is not the one before the Commissioner, the evidence discloses that following the filing on March 30, 1939, of plaintiff's claim for refund of the tax paid on July 30, 1935, certain correspondence passed between the plaintiff and the Commissioner bearing upon the relationship of the two constituent companies, the claim for refund as originally filed having erroneously contained the statement that the Trust Company was a subsidiary of the bank. With the supplying of certain requested information to the Com-

394

missioner the latter on July 26, 1939 ruled on the claim for refund on its merits and denied the same. It is to be noted that the correspondence and documents requested by and supplied to the Commissioner were all supplied within the four year period of limitation for filing claims for refund. If the claim was improperly presented, the Commissioner could have objected to the form of submission and rejected the claim as filed. This he did not do. No objection was ever made by him to the manner whereby the claim was presented, nor question of its sufficiency raised. It was received and acted upon with apparent full appreciation of the facts after the Commissioner had made his investigation. Furthermore, if the defendant had desired in this proceeding to question the sufficiency of the claim for refund, such defense should have been pleaded specifically. See Rules 8 (c) and 9 (c) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c. As to situations where claims for refund were allowed, even though deficient in form, where no timely objection was made by the Commissioner, see United States v. Kales, 314 U.S. 186, 62 S.Ct. 214, 86 L.Ed. 132. Tucker v. Alexander, 275 U.S. 228, 48 S.Ct. 45, 72 L.Ed. 253, and United States v. Andrews, 302 U.S. 517, 58 S.Ct. 315, 82 L.Ed. 398. I am of the opinion that the contention of the Government on this point is not well founded.

Since it is my view that the net assets in the amount of $3,776,519.34 brought by the Trust Company to the consolidated company did not under the relationship and the facts existing in this case represent "paid in surplus and contributions to capital" within the meaning of Section 701 of the Revenue Act of 1934, it becomes unnecessary to determine the year in which the transaction occurred, and no determination is made of such issue.

I realize that what is said here and the conclusion reached is at variance with my memorandum of April 16, 1941, heretofore filed in this case in denying the plaintiff's motion for a summary judgment. However, a further study of the pleadings, the exhibits now before the court, and the law, convinces me that the conclusion then reached was in error, and so feeling it is my obligation to correct it. The Clerk is accordingly directed to enter judgment for the plaintiff against the defendant. This memorandum is hereby made a part of the foregoing Findings.