## UNITED STATES v. NORTHWESTERN NAT. BANK & TRUST CO. OF MINNEAPOLIS.

### No. 12488.

Circuit Court of Appeals, Eighth Circuit.

Sept. 13, 1943.

Paul S. McMahon, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and Samuel H. Levy, Sp. Assts. to Atty. Gen., and Victor E. Anderson, U. S. Atty., and Linus J. Hammond, Asst. U. S. Atty., both of St. Paul, Minn., on the brief), for appellant.

Grant W. Anderson, of Minneapolis, Minn., for appellee.

Before GARDNER, THOMAS, and JOHNSEN, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal by the defendant, United States of America, from a judgment entered against it in an action brought to recover capital stock taxes theretofore paid.

The action was tried to the court without a jury. The court's findings of fact, to which no objections nor exceptions are urged, will be accepted as the basis for the statement of facts. On and prior to December 30, 1933, the Minnesota Loan and Trust Company was a corporation organized and doing business as a Minnesota corporation, and the Northwestern National Bank, of Minneapolis, Minnesota, was a national banking association, doing business in Minnesota. These two corporations were affiliated. Legal title to the stock of the trust company was held by trustees under a trust agreement which provided that the stock of the trust company should be

continuously owned by the persons who from time to time should be the shareholders of the bank. Each stock certificate issued by the bank contained an appropriate endorsement to the effect that the owner was beneficially interested with the other stockholders of the bank in a pro rata amount of the stock of the trust company. Between the close of business on Saturday noon, December 30, 1933, and the opening of business on Tuesday morning, January 2, 1934, the bank and the trust company were consolidated under the charter of the bank and under the name of the Northwestern National Bank and Trust Company of Minneapolis. Section 5 of the consolidation agreement, which is dated September 29, 1933, provided that as its contribution to the capital surplus and undivided profits of the consolidated corporation, the bank should contribute net assets in an amount not less than $4,600,000, and that the trust company should contribute net assets in an amount not less than $2,-500,000. The trust company's actual contribution was $3,776,519.34. Section 8 of the consolidation agreement provides as follows: "The consolidation shall become effective when it shall have been ratified and confirmed by the affirmative vote of the shareholders of each of said associations owning at least two-thirds of its capital stock outstanding at a meeting to be held pursuant to a call of the Directors heretofore made, and shall have been approved by the Comptroller of the Currency of the United States."

On September 11, 1933, the Comptroller of the Currency wrote the bank approving the plan of consolidation. On December 30, 1933, the shareholders of the two organizations ratified and confirmed the plan. On January 2, 1934, the Comptroller of the Currency issued a formal certificate attesting to the fact of the consolidation, and on January 25, 1934, the Commissioner of Banks of the State of Minnesota issued a like certificate.

On August 31, 1934, acting under the provisions of Section 701 of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 787; the consolidated corporation made its 1934 return of capital stock tax and declared that the value of its capital stock as of the close of business December 31, 1933, was "None." On July 29, 1935, it filed its 1935 return of capital stock tax for the year ending December 31, 1934. In Item 10 it reported the adjusted declared value of its capital stock as of December 31, 1934, as $7,574,348.73, including as a part of this the net assets in the amount of $3,776,519.34, which the trust company had contributed to the consolidated corporation. Plaintiff paid a tax based on this report, of $7,574. On March 30, 1939, it filed a claim for refund for $3,776, being the tax paid on the value of the assets of the trust company. The claim was rejected and this action followed. The trial court, on the facts so found, held that plaintiff was entitled to recover, and entered judgment for $3,776 and interest. From this judgment the United States has appealed.

The decision of the trial court is based on its conclusion that there was no property received from the trust company which constituted paid-in surplus or a contribution to its capital. It is contended on this appeal that the court was in error in so holding.

Section 701 of the Revenue Act of 1934 provides that for the year ending June 30, 1934, there is imposed on every domestic corporation an excise tax of $1 for each $1,000 of the adjusted declared value of its capital stock. For the first year ending June 30, the adjusted declared value is the value as declared in the first return under this section as of the close of the last income tax taxable year ending at or prior to the close of the year for which the tax is imposed, or as of the date of organization in the case of a corporation having no income taxable year ending at or prior to the close of the year for which the tax is imposed. For any subsequent year ending June 30, the adjusted declared value is the original declared value plus (1) the cash and fair market value of property paid in for shares and (2) paid-in surplus and contributions to capital, either cash or property.

The consolidation was effected under the charter of the bank, and it was provided that amendments to the articles of incorporation should be made to conform to the agreement of consolidation, and the bank's articles of association were accordingly amended. It was provided that for each share of the bank, together with the accompanying beneficial interest in $\frac{1}{5}$ of a share of the trust, there should be allowed one share of the capital of the consolidated association.

The two entities were thus brought into union under the authority of the Act of

June 16, 1933, 48 Stat. 190, 12 U.S.C.A. § 34a, which permits any state bank to consolidate with a national banking association located in the same state, county, city, town or village, under the charter of the national banking association. The pertinent part of the statute relating to the effect of the consolidation reads as follows: "* * * the corporate existence of each of the constituent banks and national banking associations participating in such consolidation shall be merged into and continued in the consolidated national banking association and the consolidated association shall be deemed to be the same corporation as each of the constituent institutions."

By force of this statute all the rights, franchises and property of the constituent bank and of the national bank association are deemed to be transferred to and vested in the consolidated association, without deed, conveyance or other formal transfer.

The Minnesota statute relative to consolidation of a state bank with a national banking association is Chapter 348, Session Laws of 1931, Sec. 7699-9½ Mason's Minnesota Statutes Supp.1940. Construing a similar statute pertaining to the consolidation of state financial institutions, the Supreme Court of Minnesota, in First Minneapolis Trust Co. v. Lancaster Corporation, 185 Minn. 121, 240 N.W. 459, 463, among other things said: "* * * the consolidating institutions continue their corporate existence in merged form in the consolidated corporation." And further: "The constituents of the new corporation have not lost their original identity which continues as one of the characteristics of the new corporation."

The controlling statute here is doubtless the federal statute under which combinations or associations of corporations may assume various forms. Terminology may not be exact when employed in a general sense to designate the one or the other. What is said in Fletcher, Cyclopedia Corporations Sec. 7075, is here apposite. It is there said: "The combining of corporations may result in three possible conditions or situations. First, a coalescence or union of the two corporations, neither being extinguished, second, an extinction of one corporation and its absorption by the other, third, a vital succession or the extinction of both original corporations and the creation of a new one. The last is, strictly speaking a consolidation, the second, a merger and the first falls within the technical definition of neither a consolidation nor a merger. It results generally where one corporation merely purchases or leases the property of another corporation or obtains control of a majority of its stock, without any intent to merge."

While Congress in this statute may have used a legal term without meticulous precision, it has left no room for doubt as to what result it intended—"the consolidated association shall be deemed to be the same corporation as each of the constituent institutions." The legal effect of the consolidation upon the two constituent corporations is clearly manifest.

Taxation can be imposed here only if property or cash was paid in for shares, or was received so as to constitute paid-in surplus or contributions to capital. Sec. 701 (f), Revenue Act 1934. Since by the very language of the statute, the consolidated association must be deemed to be the same corporation as each of the constituents, it necessarily follows that nothing could be received in the form of property that it did not have before the union. The effect of the merger or consolidation depends upon the statute authorizing it. Cannon v. Dixon, 4 Cir., 115 F.2d 913; Pennsylvania Co. v. Commissioner, 3 Cir., 75 F.2d 719; Keokuk & W. R. Co. v. State of Missouri, 152 U.S. 301, 14 S.Ct. 592, 38 L. Ed. 450.

We are of the view that the trial court correctly determined this controlling issue and the judgment appealed from is therefore affirmed.