FIDELITY–BALTIMORE NATIONAL BANK, a body corporate, Appellee,

v.

UNITED STATES of America, Appellant.

No. 9078.

United States Court of Appeals Fourth Circuit.

Argued Oct. 4, 1963.

Decided March 10, 1964.

---

10. Rules 4(d) (3) and 4(d) (7), Fed.R. Civ.P.; 28 U.S.C. § 1694; Millard v. Castle Baking Co., 23 Ill.App.2d 51, 161 N.E.2d 483 (1959).

Bernard J. Schoenberg, Attorney, Department of Justice (Louis F. Oberdorfer, Asst. Atty. Gen., Meyer Rothwacks and Philip R. Miller, Attorneys, Department of Justice, Joseph D. Tydings, U. S. Atty., and Robert W. Kernan, First Asst. U. S. Atty., on brief), for appellant.

George D. Hubbard, Baltimore, Md. (Semmes, Bowen & Semmes, Baltimore, Md., on brief), for appellee.

Before HAYNSWORTH, BOREMAN and BRYAN, Circuit Judges.

HAYNSWORTH, Circuit Judge.

Sometime after the merger of a national bank and a state bank, to operate thereafter under the charter of the national bank, the Commissioner asserted the stamp tax obligations which are the subject of this controversy. He contended that original issue stamp taxes were required, measured by the aggregate par value of the stock issued to the stockholders of the state bank, and, in addition, measured by the aggregate par value of the stock issued to the stockholders of the national bank to the extent that amount exceeded the aggregate par value of the stock of the national bank previously outstanding. He also asserted a transfer tax on the transfer from the state bank to its stockholders of its right to receive stock of the merged bank in exchange for its assets and upon the transfer from the state bank to the national bank of its portfolio of securities. The asserted stamp taxes were paid, and subsequently a suit for refund was begun. On the basis of a provision of § 3 of the National Banking Act [1] that the identity of each of the constituent banks "shall be merged into and continued in the consolidated national banking association [which] shall be deemed to be the same corporation as each of the constituent institutions," the District Court held that no transfer tax was due because no transfer had taken place. Similarly, it held that no original issue stamp taxes were due upon the issuance of stock of the consolidated bank to former stockholders of the state bank.

Under an agreement dated April 30, 1954 and effective July 16, 1954, Fidelity Trust Company, a bank organized and theretofore operated under the laws of Maryland, was merged into the Baltimore National Bank, a national bank organized and theretofore operated under the National Banking Act. The "Agreement of Consolidation" provided that the two institutions "shall be consolidated under the charter of the Baltimore National Bank, and that its name would thereafter be changed to Fidelity-Baltimore National Bank & Trust Company." Under the Agreement of Consolidation, the stockholders of Baltimore received 143,-750 new shares of $10 par stock in exchange for the 125,000 shares of $10 par stock theretofore outstanding. It is conceded that original issue stamp taxes are due with respect to the issuance of the additional 18,750 shares issued to former

1. 12 U.S.C.A. § 34a, hereinafter referred to as § 34a. In 1959 the National Banking Act was substantially amended. Provisions comparable to those of 12 U.S. C.A. § 34a, in effect at the time of the Baltimore-Fidelity merger, now appear in altered form in 12 U.S.C.A. § 215.

stockholders of Baltimore, for they represented an additional capitalization of retained earnings. Fidelity's stockholders, however, received 156,160 shares of the new $10 par stock in exchange for their 97,600 shares of Fidelity's old $25 par stock. Thus, Fidelity's stockholders received new stock having an aggregate par value of $1,561,600 in exchange for the old stock having an aggregate par value of $2,440,000, so that the issuance of the new stock to them was a reduction rather than an increase in nominal capital.

Under the agreement, of course, the portfolio of securities held by each of the banks became vested in the consolidated institution.

The Commissioner's theory was that under the Agreement of Consolidation, as required by the National Banking Act, the resulting institution operated under the charter of old Baltimore, and, in legal effect, was still that same corporate entity. Thus, to the extent that the aggregate par value of new stock issued to Baltimore's old stockholders did not exceed the aggregate par value of their old stock, he asserted no original issue stamp taxes. Nor did he assert any transfer stamp taxes because of the transfer of Baltimore's portfolio of Securities to the consolidated institution, for, in his view, old Baltimore and the consolidated institution being the same, no transfer had occurred. However, he refused to recognize any continuation in the consolidated institution of Fidelity's earlier identity, and he asserted original issue stamp taxes upon the issuance of stock to Fidelity's stockholders and transfer stamp taxes upon transfers by Fidelity of its right to receive Fidelity Baltimore stock and of its portfolio of securities.

The District Judge, however, was of the view that, by virtue of § 34a of the National Banking Act, the identity of Fidelity was continued in the consolidated institution just as was that of Baltimore. He thus concluded that there

had been no taxable transfer by Fidelity to its stockholders or to the consolidated institution, and that no original issue stamps were due with respect to the stock issued to Fidelity's stockholders. With this, we disagree.

If, from an economic point of view, one seeks symmetry in the stamp taxes imposed by § 1802 of the Revenue Code of 1939,[2] he will find but little. Transfers of legal titles are taxed. Imposition of the tax is dependent largely upon form, and, with some specific statutory exceptions, absence of change in beneficial or economic relations does not defeat imposition of the tax upon a transaction within the general provisions of the statute. Technicalities, often attenuated, determine the line between the taxable and the nontaxable.

When two corporations merge or consolidate, each may be said to have contributed its net assets to the newly undertaken joint venture. Each might be said to have contributed, as such, its stated capital, its capital surplus, and its accumulated earnings. The stockholders of neither, however, make any contribution of fresh capital. All that they do is to approve an agreement that the businesses of the corporations be combined and thereafter conducted under one corporate roof. The amalgamation works a change in the assets underlying the stock of the stockholders of each constituent, but there is no new capital. Except to the extent that accumulated earnings may be capitalized in the transaction, the new stock issued in exchange for the old stock of each constituent is not "original" in any practical or economic sense. It is only a substitute, the new certificates taking the place of the old as to which original issue stamp taxes were fully paid.

Nevertheless, from the language of the statute and its history of administration and interpretation, it is now beyond question that original issue and transfer tax stamps are required as a result of such mergers or consolida-

2. This merger was accomplished before the effective date of the 1954 Code.

tions.[3] What phases of the transaction are taxable, however, will vary with the form in which it is cast. Handled as a traditional consolidation, a newly formed corporation succeeding to the rights, assets and obligations of the constituents, original issue stamps must be affixed to the stub of each new stock certificate and transfer stamps to each old certificate surrendered in exchange for the new. On the other hand, if, as in the traditional merger, one of the constituent corporations becomes the surviving one, a technical variant of a consolidation without economic significance, the surviving corporation has not, in a technical sense, transferred to its stockholders any right to receive new stock. Thus no transfer taxes are due when the old stock of that constituent is surrendered for new, and original issue stamps are required on that phase of the transaction only if, and to the extent that, the aggregate par value of the new stock exceeds that of the surviving constituent for which it is exchanged. In a merger, however, both original issue and transfer stamps are due upon the exchange of new stock for the old stock of those constituent corporations which do not survive.

Under these circumstances, there is nothing unreasonable in the suggestion of the District Court and of the taxpayer, that Congress might create a new kind of hermaphroditic corporate union in which each of the constituent corporations would retain its identity, sex, character and flavor in a legal and technical sense, and that in that event, no transfer would take place, and the disputed stamp taxes would not be due. The question is whether Congress has provided for such a union of national and state banks.

Fidelity-Baltimore concedes that if this be regarded as a traditional merger, it is not entitled to recover any of the disputed stamp taxes it paid. Its position that it is not a traditional merger is supported, however, only by certain of the provisions of § 34a. That Section does provide in part, of course, that the identity of each constituent bank shall be merged into and continued in the consolidated bank, and that the consolidated bank shall be deemed to be the same corporation as each of the constituents. On its face, that sounds like a provision for the kind of hermaphrodite for which the taxpayer contends the Congress made provision.

■■ That part of § 34a of the National Banking Act, however, was adopted as a response to a particular problem. The Supreme Court had held in 1929, in Ex Parte Worcester County National Bank, 279 U.S. 347, 49 S.Ct. 368, 73 L.Ed. 733, that after the merger of a state bank into a national bank under the National Banking Act, the identity of the state bank was lost and the consolidated bank could not act as an executor under a previous appointment by a probate court of the state bank. Amalgamations of national and state banks were impeded by that decision and by restrictive state laws, with the result that in the Banking Act of 1933,[4] the provision upon which the plaintiff relies was added to § 34a of the National Banking Act. There is no evidence whatever that the 1933 amendment was intended to do anything other than to preserve to the consolidated corporation previously existing rights of the state bank constituents, including those rights it exercised under fiduciary appointments of state courts. There is nothing to suggest that the Congress had in contemplation any modification of the stamp tax obligations which would be incurred in the course of a merger for which provision already existed in the unamended statutes. That the Congress did not intend by the 1933 amendment to provide for the kind of hermaphroditic institution which Fidelity-Baltimore contends resulted is strongly indicated by the fact that the amended statute continues the requirement that the resulting corporation shall operate under the charter of the national bank. Pursuant to that re-

---

**3.** See Raybestos-Manhattan, Inc. v. United States, 296 U.S. 60, 56 S.Ct. 63, 80 L. Ed. 44.

**4.** 48 Stat. 190.

quirement the state charter is necessarily abandoned, and it is plain that the resulting national bank may not thereafter conduct its business in violation of federal law though in accordance with what state banks may do under state law. Though the consolidated national bank succeeds under the statute to all of the state created rights of a state bank constituent, state laws subsequently adopted may neither enlarge nor detract from such rights.[5] In the nature of things, the consolidated national bank could not remain subject to state regulation which was incompatible with federal requirements.

In the decided cases, there is very little to guide us.

▮ Our conclusion finds some support in First Trust Co. of St. Paul v. United States, D.C.Minn., 15 F.Supp. 634. There, state financial institutions were merged under a state statute providing that the corporate existence of each should be merged into the consolidated corporation, a provision which the state interpreted to mean that the identity of each of the constituents was preserved and continued. The court held that, for the purpose of stamp tax requirements, the union of those institutions should be treated as a conventional consolidation. It indicated that application of the tax stamp statutes was a matter of federal rather than state law, but plainly the federal statute imposes the tax on the basis of state created relationships. If a state statute requires that such amalgamations be in the form of a traditional merger, federal law does not impose stamp taxes on the basis that what was done was the equivalent of a traditional consolidation permitted under the laws of other states. Imposition of the tax is governed by the form in which the transaction is cast, provided it is within the authorization of state law, and, obviously, the provisions of state law considered in First Trust Co. of St. Paul

v. United States affected the form of the transaction in precisely the same way as that part of § 34a upon which Fidelity-Baltimore relies affects the transaction here. In each case, the transaction was cast in the form of a traditional merger or consolidation, and in neither case is the statutory provision for the continuation of the identity of the constituents effective to alter the form in which the transaction was actually cast. As we noted at the outset, it is the form of the thing which governs the imposition of stamp taxes.

We find little support in United States v. Seattle-First National Bank, 321 U.S. 583, 64 S.Ct. 713, 88 L.Ed. 944, upon which the Government strongly relies. There, it appeared, as here, a state bank had been merged into a national bank, and the question was whether stamp taxes were payable upon the transfer of portfolio securities previously owned by the state bank, securities held in fiduciary capacities by the state bank, and the state bank's real estate. The Supreme Court held that all such transfers occurred "by operation of law" and were, therefore, exempt under the administrative regulations then in effect. The United States insists that the Supreme Court could not have reached the question of exemption, unless it first held that transfers had occurred. It is clear, however, that certiorari was granted to resolve a conflict between the circuits on the exemption question, and that the Supreme Court addressed itself solely to that question. The fact that it assumed that transfers had occurred which would have been taxable, if not exempt, is far from an explicit command to us when faced with the question of transfer *vel non*. The Supreme Court did not mention that part of § 34a upon which the taxpayer here relies, though the trial court had mentioned those provisions in connection with its consideration of the passage of legal title to the real estate of the state

5. Hofheimer v. Seaboard Citizens' National Bank of Norfolk, 154 Va. 896, 156 S.E. 581, which, however, was decided before the 1933 amendment.

bank.[6] Our conclusion is in accord with the implicit assumption of the Seattle Bank case, but assumptions of answers to unraised questions are not the firmest foundation for subsequent judicial decision.

The Seattle Bank case does not permit us to dispose of the question here on the exemption basis, however, for, after the Seattle Bank decision by the Supreme Court, the Congress expressly provided that, with certain exceptions, transfers not otherwise exempt shall not be exempt because effected by operation of law.[7] Transfers of the sort with which we deal are not among the statutory exceptions. The Congress thus emphasized its intention that stamp taxes be imposed in exactly the kind of context with which we are concerned.

The taxpayer finds support for its position in United States v. Northwestern Nat. Bank & Trust Co. of Minneapolis, 8 Cir., 137 F.2d 761, and Old National Bank in Evansville v. Commissioner, 7 Cir., 256 F.2d 639, but we find neither persuasive.

In the Northwestern Nat. Bank case, the court was concerned with declared value capital stock taxes due by a consolidated national bank after the merger of a state bank into it. It concluded that the national bank was not required to increase the previously declared value of its capital stock by the amount of the capital additions it acquired in the merger with the state bank. The court relied upon the language of § 34a, upon which the contentions of the taxpayer here are bottomed. It reasoned that each of the banks continued in existence, holding, in effect, that the national bank had acquired nothing from the state bank. The decision supports the taxpayer's position, but it seems obvious to us that the consolidated institution did acquire capital from the state bank. If, as the court reasoned, the identities of the constituent banks are to be kept separate after the consolidation, so that the national bank could file capital stock returns without regard to the effect of the merger, there should have been a concomitant requirement that the still separably identified state bank file separate returns and pay the taxes due. The tax statutes, however, require that the consolidated corporation file one return, and that the one return reflect the effects of the merger.

The Old National Bank in Evansville case has little bearing upon the present question. After the merger of a state bank into a national bank, the consolidated national bank sought to avail itself of an unused excess profits tax credit, which the state bank had at the time of the merger. It was shown that the consolidated bank had substantial profits from the operations of the units it acquired in the merger with the state bank against which the entire amount of the unused profits tax credit could be utilized. The essential question was whether the demonstrated profits arose out of a continuing enterprise in which the tax credit had previously been earned within the rule of Libson Shops, Inc. v. Koehler, 353 U.S. 382, 77 S.Ct. 990, 1 L.Ed.2d 924. The holding that it was would seem to have little relation to the present case, except that the court relied in part upon the provision of § 34a which is before us. That Section had not been relied upon by the taxpayer nor mentioned by the Tax Court. While the Court of Appeals buttressed its conclusion by reference to that Section, the court's conclusion is fully supportable without it. At least, the decision does not suggest that amalgamating banks shall be exempt from stamp taxes uniformly imposed upon other amalgamating corporations.

We, therefore, find that Old National Bank in Evansville has little bearing on the present question and the Northwestern National Bank case unpersuasive.

 While we find little guidance in the decided cases, we cannot escape the fact that the union of Baltimore and

---

6. See Seattle-First National Bank v. United States, E.D.Wash., 44 F.Supp. 603.

7. 26 U.S.C.A. § 1802(c).

Fidelity was accomplished as a traditional merger. That it be achieved in that manner is a specific requirement of the National Banking Act. In the process, the state bank was necessarily swallowed up, and thereafter in no real sense can it be said to have had a separable identity. As is said in 15 Fletcher, Private Corporations 371, § 7199 (1961 ed.) of the National Banking Act:

" * * * Its words are explicit to the point that the consolidation or merger shall be 'under the charter of such national banking association.' This of itself would seem to be clearly indicative of the intent that upon its consolidation with or merger into a national bank the state bank shall go out of existence and the latter continue its existence and identity under its original charter. Its functions as a national bank continue without alteration or modification. The consolidation is an absorption of the state institution with all its assets, by the national bank, which succeeds to all the rights, property, franchises, interests and powers of the state institution, so far as the exercise of them is permitted by federal legislation. * * "

The provision of § 34a for the continuation of the identity of each of the constituents can be harmonized with the requirement that the state bank be merged into the national bank by limiting the former provision to the purpose for which it was adopted. Utilized to protect the operation of the consolidated bank and, so far as consistent with federal and state law, its enjoyment of all rights and privileges of the state bank, it usefully serves its intended office. Incidentally, it assists in answering such collateral but related questions as to whether or not a fiduciary's exchange of stock of a constituent state bank for the stock of the consolidated national bank is a change of investment beyond his authority.[8] Thus limited, it can be harmonized with the clear intendment of other provisions of the statute without impairment of its usefulness in the areas in which it was intended to operate.

We thus conclude that the provision that the consolidated bank is to be regarded as a continuation of each of the constituents did not carve out an arbitrary exception to the tax statutes, which are already arbitrary enough but easily administered, so as to exempt merging banks from stamp tax obligations uniformly imposed upon all other merging corporations. Congress might do that if it wished, but we hold that it has not yet done so.

Reversed.

8. See Cannon v. Dixon, 4 Cir., 115 F.2d 913, 915.