Martin S. BIRDSALL, Appellant,

v.

J. W. COUNTS d/b/a Kimberley Apartments et al., Appellees.

No. 17075.

Court of Civil Appeals of Texas,
Fort Worth.

Jan. 9, 1970.

Rehearing Denied Feb. 6, 1970.

James T. Rudd, Grand Prairie, for appellant.

Brown, Day & Crowley, and M. Hendricks Brown, Fort Worth, for appellee, J. W. Counts, d/b/a Kimberley Apartments.

Gardere, Porter & DeHay, and Gordon H. Rowe, Jr., Dallas, for appellee, C. D. Sessions.

## OPINION

BREWSTER, Justice.

This is a suit for damages for personal injuries sustained by plaintiff in a fall to the ground from the second floor level of an apartment house. The defendant, J. W. Counts, was the owner of the apartment house and the defendant, C. D. Sessions, was a contractor who was at the time of the injury in the process of making repairs to an outside staircase that led to the second floor of the apartment house and to the banisters on the second floor walkway and to the handrailing on the staircase leading to the second floor.

The trial judge rendered a summary judgment in favor of both defendants denying the plaintiff a recovery and the plaintiff has appealed. The summary judgment was granted by the trial judge on the theory that plaintiff was guilty of contributory negligence as a matter of law and on the further theory that the volenti doctrine and the no duty doctrine, when applied to the facts of this case, both barred a recovery by plaintiff.

We affirm the judgment of the trial court.

The evidence presented to the trial judge was contained in the deposition of plaintiff, Birdsall, the deposition of Mrs. Birdsall (plaintiff's wife), the deposition of the defendant, Sessions, the deposition of the defendant, Counts, and the affidavit of plaintiff, Birdsall.

Plaintiff either testified to facts set out below or they were established by undisputed evidence.

Between 9 P.M. and 11 P.M. on the night plaintiff was hurt, he and his wife left home and went out to see some friends and, when they found them gone from home, went to a place called Mary's Lounge. Plaintiff had consumed two beers at home before going out that evening and consumed two more at this lounge. He had four beers in the course of five hours that evening. They met a Mrs. Baker and her ex-husband at this lounge. Mrs. Baker invited them all to her apartment and they all rode over there in plaintiff's pickup. Mrs. Baker's apartment was on the second floor. There was an outside stairway that was the only means of getting to the second floor and plaintiff could see that there were no handrails and he knew at all times that there was no railing on either side of the steps. There was not much light around these steps and you could not see good. They all arrived at this Baker apartment at night between 12:30 A.M. and 1:30 A.M. On arrival all four safely ascended the staircase and went into the Baker apartment and stayed there about 30 minutes. Plaintiff only drank one mouthful of beer while there. Mrs. Baker and her ex-husband started quarreling so plaintiff and his wife left. Plaintiff knew and appreciated that there is always danger in using stairs where there are no handrails. On leaving the Baker apartment he and his wife safely made their way down the stairs in question to their pickup. Someone had parked behind plaintiff's pickup so he could not get out. He stayed at his car for about 30 minutes and then went safely back up the stairs to Mrs. Baker's apartment and knocked on the door. The Bakers refused to open the door. Plaintiff was upset with himself for permitting his car to get blocked in. It was dark at the top of the stairs.

The steps of the stairway at the apartment house were between 4 and 5 feet

wide and were 12 inches deep. Each step was about 10 inches high and these steps were made of corrugated steel and were not slippery. The walkway that runs in front of the second floor apartments is about 42 inches wide. At the top of the stairway is located a landing platform. This platform is about 4 feet by 4 feet in size. This platform at the top of the stairs is at a different level from the second floor walkway. The evidence established that the platform is somewhere between 2 inches and 6 inches lower than the second floor walkway. This platform at the top of the stairs is 8 or 9 feet above the ground.

The apartment house in question faced south. If you stepped from the walkway in front of the second floor apartments to the platform at the top of the stairway you would still be facing south. To then go down the steps you would, while on the platform, turn to the right and go down the steps in a westerly direction.

Just before and at the time he fell plaintiff was in a hurry and was angry and had momentarily forgotten that the handrails were not there. Plaintiff did not trip on anything or slip on anything when he fell. He saw no warning signs at the apartment house that night. The plaintiff and his wife were the only witnesses to his fall.

The plaintiff sustained serious injuries in the fall, including a fractured skull. There are two versions reflected by the record here as to just what happened when plaintiff fell.

In plaintiff's deposition the version he gives of the fall is that after Mrs. Baker refused to answer his knock at her door that he turned around and took one step from the walkway in order to go back down the stairs. He was in the act of stepping from the top level or walkway that ran in front of the apartment toward the first step. When he did this he had just stepped out into space, reached for the handrailing that was not there and just went on out into space without ever coming in contact with anything and fell on to the ground below. In his deposition he expressed his belief that the cause of his fall was the absence of a handrail which he reached for while falling and which was not there.

Plaintiff filed in the case an affidavit in resistance to the motion for summary judgment. This affidavit gives a different version of his fall and this version is corroborated by the testimony of his wife given in her deposition.

In his affidavit he stated that when you looked at the landing at the top of the staircase where it joined the walkway it all appeared to be a flat, level surface. He said that when he fell he stepped from the walkway that ran in front of the second floor apartments to the platform landing at the top of the staircase thinking they were on the same level and that there was no step there either up or down. When he made this step he fell forward because the platform that he was stepping onto was at a level of 2 inches to 3 inches lower than the walkway he had been on. This unexpected difference in levels caused him to fall forward off the platform to the pavement below. He did not know at the time he stepped that the platform landing and walkway were not at the same levels. When he lost his balance and fell forward, he reached for the banister to break his fall but there was none.

Plaintiff had never been to these premises prior to the night in question. When he first arrived at the apartments on the night in question he had safely and successfully ascended this staircase and had stepped from the platform at the top of the stairs to the walkway that ran in front of the Baker apartment. Thirty minutes later he safely and successfully went from the walkway to the platform and on back down these stairs to the ground below. Thirty minutes after that he again safely ascended these same stairs to the second floor of the apartment building and knocked on the door to the Baker

apartment. When Mrs. Baker refused to answer the door, plaintiff angrily and hurriedly started to make his fourth trip from the walkway to the platform and then over these same stairs. This was the occasion when he fell.

The facts presented in this record make it obvious that plaintiff momentarily forgot about the difference in levels of the walkway from which he stepped and of the platform at the top of the stairs to which he was making his last step on the occasion. This is true because when he did make this last step and the levels were different he was caused to fall forward and on to the ground.

The plaintiff alleged that his injuries were proximately caused by four acts of negligence committed by each of the two defendants, same being:

1. In failing to properly light the exterior of the apartment house on the occasion in question;

2. In failing to provide warning signs to warn of absence of banisters and rails;

3. In failing to erect temporary banisters and rails during the construction period;

4. In failing to properly inspect the progress of the work.

The defendants pleaded the volenti non fit injuria doctrine and contributory negligence on plaintiff's part as defenses to plaintiff's suit.

The defendant, Sessions, alleged no specific acts or omissions but pleaded generally contributory negligence on the part of plaintiff. The defendant, Counts, alleged that plaintiff committed many negligent acts of commission and omission and that his failure to keep a proper lookout for his own safety was one of them.

Plaintiff's first point is in substance that the trial court erred in holding that the volenti and no duty doctrines, when applied to this case, entitled defendants to a summary judgment in their favor.

It is settled that in determining whether a summary judgment should be rendered the court must view the evidence in the record in the light most favorable to the party opposing the motion and must accept as true all evidence that tends to support his position. A number of cases to this effect are cited in Vol. 2, T.R.C.P., under Rule 166-A, note 80.

In this case if plaintiff's deposition testimony is taken as the facts of the case, then he just stepped out into space from the second floor walkway and missed the landing platform and the steps completely and fell from the walkway to the concrete below without touching any other part of the building.

He knew of the absence of the banister and handrailings and their absence was what caused him to fall. He knew and appreciated the danger created by the absence of these handrails or banisters. He voluntarily exposed himself to the danger of using this dark area with an absence of handrails.

We believe that if plaintiff was bound by his deposition testimony to this version of how he fell that there would be no question but what the doctrine of volenti non fit injuria would defeat a recovery by him against either defendant.

It must be remembered here that the record shows that plaintiff fell to the concrete below and was knocked unconscious, sustained a fractured skull, and a broken back. His wife testified that it appeared that all he could remember about the incident later was that one last step. She said she saw him fall and gave the other version of the fall as above set out, and he later corroborated it by the affidavit. We do not believe that under these facts plaintiff's deposition testimony constituted admissions to which he was bound.

We believe that in this state of the record, where we have two conflicting

versions of the fall, the trial court had to disregard the version of his fall that did not present the facts most favorable to plaintiff and could consider only the version that was most favorable to him in determining whether or not to grant the summary judgment. Rosas v. Doreen, 402 S.W.2d 813 (Dallas Tex.Civ.App., 1966, no writ hist.) and Brown v. Grayson Enterprises, Inc., 401 S.W.2d 653 (Dallas Tex. Civ.App., 1966, ref., n. r. e.).

The remaining question to be decided on this point then is: assuming the version of plaintiff's fall as related in his affidavit and as testified to by his wife to be true, did the trial court correctly hold that the "volenti doctrine" and "no duty" doctrine prevented plaintiff from recovering in this case?

Plaintiff's testimony was to the effect that the area where he started his fall was not light enough for him to see. It was dark there. His wife testified that the condition of the lighting was obvious.

■ Assuming here that plaintiff was an invitee on the premises involved, then the owner of the premises owed him the duty to use ordinary care to keep the premises in a reasonably safe condition for his use. The owner's duty to warn an invitee of existing dangers does not extend to an invitee who has actual knowledge and appreciation of the danger, and does not exist where the danger is so open and obvious that such invitee is charged in law with knowledge and appreciation of such danger. Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368 (Tex.Sup., 1963).

The Supreme Court of Texas said the following about the "volenti doctrine" in the Halepeska case, supra:

"The volenti doctrine is an affirmative defense. 'Volenti' is a contraction of the Latin phrase, volenti non fit injuria, which means legally that a plaintiff may not recover for an injury to which he assents; that a person may not recover for an injury received when he voluntarily exposes himself to a known and appreciated danger. In this state, the decision to incur the risk must have been deliberate; i. e., made with knowledge and appreciation of the danger so that it may be said that the person acted as a result of an intelligent choice. Wood v. Kane Boiler Works, 150 Tex. 191, 238 S.W.2d 172 (1951). Logically, a plaintiff cannot make an intelligent choice to confront a risk if he does not actually know of the danger, or know such facts as would in law charge him with knowledge of the danger and appreciation thereof. Thus, while the cases speak of the requirement of actual knowledge and appreciation, the plaintiff may not close his eyes to obvious dangers; and he may not recover where it is shown that he is in possession of facts from which he would be legally charged with appreciation of the danger. Schiller v. Rice, 151 Tex. 116, 246 S.W.2d 607 (1952)."

■ We believe that the particular danger with which the plaintiff was confronted in this case and which caused his fall was the danger of walking around in this dark area where steps were located, at a time when it was so dark that he could not see where the steps were.

Within the hour just before he fell plaintiff had successfully and safely traversed this same area in its darkened condition and had gone up and down the particular step in question safely three times within that period. The last time plaintiff travelled safely over this same area where he fell was just minutes before he fell.

We believe that when the principles announced in the Halepeska case are applied to the facts of this case that the volenti doctrine keeps plaintiff from recovering here.

Plaintiff was not asked whether he knew that there was a danger of a person falling and being injured if he walked in a darkened area where he would be required to go up or down steps that he could not see. Nor was he asked whether or not he ap-

preciated that there was a danger of falling and being hurt while walking in such an area in the dark.

We hold that the danger of falling while walking in the dark in the area of the step where plaintiff was caused to fall was known to plaintiff. He had within the last hour traversed this step where he fell as well as the other steps of the staircase three times. The last time he stepped up such step was only minutes before he was hurt. We believe that under such circumstances plaintiff is properly charged with knowledge and appreciation of the danger of falling and getting hurt while walking in this area of the steps in the dark.

Plaintiff was around 57 years old, was an aircraft assembler, and we must assume that he had at least normal intelligence. He had been up these steps twice and down them once within the hour just before he fell. He knew that after he knocked on the Baker door and after he turned hurriedly and in anger to go back to the ground floor that in order to get back down to the ground floor that he would have to travel over these same steps to get down that he travelled to get to the top.

Experiences gained during 57 years of life by a man of normal intelligence would cause him to be charged with the knowledge that there was a danger of a person falling and being hurt if he walked in an area where steps were located at a time when it was so dark that he could not tell where the steps were. For the same reason he would be charged with fully appreciating the danger of falling and being hurt if he travelled such an area in the dark.

We also believe that the record shows here that as a matter of law the plaintiff was using the area where he was hurt as a result of an intelligent choice.

We also hold that the danger of falling by walking in this darkened area where the steps were located and where plaintiff fell was so open and obvious that plaintiff is charged in law with knowledge and appreciation of such danger.

We believe the case of George v. City of Fort Worth, 434 S.W.2d 903 (Fort Worth Tex.Civ.App., 1968, ref., n. r. e.) and the case of Murphy v. City of Beaumont, 420 S.W.2d 459 (Beaumont Tex.Civ. App., 1967, ref., n. r. e.) are similar to this case and control the decision here.

In the George case, supra, the plaintiff, an invitee, fell while going down steps in the dark. She contended there, as does plaintiff here, that in the darkness it appeared to her that the step she missed blended with the platform below and appeared to her that they were all on the same level. The court there denied plaintiff a recovery.

For these reasons we believe that the trial court was correct in granting a summary judgment in favor of both defendants.

Plaintiff's second point on this appeal is that the trial court erred in holding that the plaintiff was barred from recovering here because he was guilty of contributory negligence as a matter of law.

The trial court made it clear that this was one of the grounds on which he rendered the summary judgment. The record does not, however, reflect what particular act or omission on the part of the plaintiff it was that constituted contributory negligence as a matter of law.

We believe that the trial judge incorrectly held that the plaintiff was guilty of contributory negligence as a matter of law.

The case of Blanks v. Southland Hotel, 149 Tex. 139, 229 S.W.2d 357 (1950) and the case of Walgreen-Texas Co. v. Shivers, 137 Tex. 493, 154 S.W.2d 625 (1941) are decisions by our Supreme Court in cases where the facts are somewhat similar to those in this case and which cases involve the question of contributory negligence as a matter of law.

We believe that when the rules governing a determination of whether or not one is guilty of contributory negligence as a matter of law, as set out in those two cases, are applied to the facts of this case, as set out above, that the plaintiff was not guilty of contributory negligence as a matter of law. We hold that only fact issues were presented in this regard.

The judgment of the trial court is affirmed for the reasons above set out.