**Lillian L. RICKEY et al.**

v.

**Herbert BODEN, Jr., et al.**

**No. 78–66–Appeal.**

Supreme Court of Rhode Island.

Oct. 16, 1980.

</div>

Gunning, LaFazia & Gnys, Inc., Guy J. Wells, Providence, for plaintiffs.

Hanson, Curran & Parks, A. Lauriston Parks, Dennis J. McCarten, Providence, for defendants.

## OPINION

BEVILACQUA, Chief Justice.

This is a civil action in which the plaintiffs, Lillian L. Rickey (Lillian) and Everett A. Rickey (Everett), appeal from the direction of verdicts for two of the defendants, Herbert Boden, Jr. (Boden), and Rhode Island Hospital Trust Company (the trust company) on the plaintiffs' sole allegation that the defendants negligently maintained a stairway.

The record reveals that on January 22, 1971, Lillian was working as an elevator operator in a building at 15 Westminster Street, Providence. During her coffee break that morning, at approximately 9:45 a. m., Lillian slipped and fell while climbing the south–side stairway between the eleventh and twelfth floors of the Westminster Street building on her way to a twelfth–floor room that her employer, Rhode Island Hospital Trust National Bank (the national bank), had designated as an employees' coffee–break area. According to her testimony, Lillian fell at a point at which the stairway begins to curve upward from right to left in a 180–degree turn. She remembered that she had been proceeding upward along the left–hand side of the stairway, grasping a handrail as she went. She recalled that as she was placing her left foot on the first of five wedge–shaped winding treads and was shifting from her right foot to her left foot, her left foot slipped off the tread, and she fell backwards down the stairs. She further testified that at the point at which she fell, the handrail that she had been grasping joined with a supporting post which, she claimed, was too awkward for her to hold onto in her ascent. The width of the winding tread at the point from which Lillian's left foot slipped was approximately three inches. The width of that same tread at its midpoint, approximately twelve inches from the base of the handrail, was about nine and seven–eighths inches. The regularly shaped stairway treads were uniformly about ten inches in width. At the time Lillian fell, there was no handrail on the right–hand side of the stairway proceeding upward. Lillian apparently suffered considerable injuries as a result of her fall, and she did not return to her job until September 22, 1971.[1]

---

1. The record discloses that plaintiff Lillian L. Rickey resumed her duties on September 22, 1971, on a part–time basis only. Moreover, she subsequently needed further medical care for which she apparently had to leave her job in September of 1973. The record does not, however, definitively indicate whether any of her disabilities or medical needs after September 22, 1971, were a result of her fall.

Alleging that the stairway had been negligently maintained, Lillian instituted two civil actions, one against the trust company and Rhode Island Hospital Trust Corporation (the corporation), and one against Boden, the vice president of the national bank in charge of maintaining the Westminster Street building, to recover damages attributable to her fall.[2] Lillian's husband, Everett, joined in the suits seeking consequential damages. After service on each of the named defendants, the national bank sought to replace the trust company as a defendant to the first suit, claiming that it, not the trust company, was the real party in interest because the trust company had merged with and into the national bank prior to the date of the accident. The trial justice who heard this motion permitted the national bank to join in the defense of the action but ordered that the trust company be retained as a defendant. The two complaints were consolidated, and the case proceeded to trial before a justice of the Superior Court sitting with a jury. At the apparent close of plaintiffs' evidence on liability, the trial justice, upon motion, directed verdicts for the national bank and the corporation. In directing a verdict for the corporation, the trial justice found that plaintiffs had not presented any evidence to support their allegation that the corporation at the time of the accident had controlled or owned the Westminster Street building. With respect to the direction for the national bank, the trial justice concluded that under G.L.1956 (1968 Reenactment) § 28–29–20,[3] plaintiffs were barred from recovery against the national bank because as an employee of the national bank, Lillian had received workers' compensation for the injuries incurred as a result of her fall.[4] In this appeal plaintiffs do not contest the direction of verdicts for the corporation and the national bank.

At the close of all the evidence, the two remaining defendants, the trust company and Boden, moved for directed verdicts. The trial justice granted the trust company's motion but reserved decision on Boden's motion and permitted the case against Boden to go to the jury. The jury returned a verdict for plaintiffs against Boden, awarding damages in the sum of $55,000. Notwithstanding the jury verdict, the trial justice thereafter granted Boden's motion for direction. Additionally, the trial justice granted Boden's subsequent conditional motion for a new trial, explaining that he wished to ensure a new trial for Boden in the event that the direction for Boden was overturned on appeal. The plaintiffs have appealed to this court the directions for Boden and the trust company and the order granting Boden a new trial in the event the direction in his favor is overturned.

I

With respect to the decision to direct a verdict for Boden, the trial justice explained he was basing his decision on several reasons, including his finding that even if Boden had negligently maintained the stairway, Lillian was precluded, as a matter of law, from recovering against Boden because of the doctrine of assumption of the risk. Because we agree with the trial justice that the doctrine of assumption of the risk effectively precludes recovery by plaintiffs against Boden, we need not discuss the merits of the other reasons he offered in support of his decision or the propriety of his conditional order for a new trial for Boden.

It is elementary that in considering a motion for a directed verdict, the trial

---

2. In their action against Herbert Boden, Jr., plaintiffs also named the workers' compensation insurer of Rhode Island Hospital Trust National Bank, Liberty Mutual Insurance Company, as a defendant. The case against Liberty Mutual Insurance Company was, however, subsequently discontinued.

3. General Laws 1956 (1968 Reenactment) § 28–29–20, has since been reenacted as G.L. 1956

(1979 Reenactment) § 28–29–20. P.L. 1979, ch. 39, § 1.

4. To permit the instant complaint to proceed, plaintiffs have executed an appropriate indemnity agreement with the workers' compensation insurer of Rhode Island Hospital Trust National Bank. *See generally Brimbau v. Ausdale Equipment Rental Corp.*, R.I., 376 A.2d 1058, 1061 (1977).

justice should review all the evidence in the light most favorable to the party against whom the motion is made, without weighing the evidence or considering the credibility of the witnesses, and extract from the record only those reasonable inferences that support the position of the party opposing the motion. If, after taking such a view, the trial justice finds that there exist issues upon which reasonable men might draw conflicting conclusions, the motion should be denied and the issues should be left for the jury to determine. *E. g., Scittarelli v. The Providence Gas Company*, R.I., 415 A.2d 1040, 1043 (1980). In reviewing the trial justice's decision, this court examines the evidence in the same manner and is bound by the same rules. *E. g., Geremia v. Benny's, Inc.*, R.I., 383 A.2d 1332, 1334 (1978).

■ The doctrine of assumption of risk is an affirmative defense [5] which, when applicable, operates to absolve a defendant of liability for having created an unreasonable risk. *Kennedy v. Providence Hockey Club, Inc.*, R.I., 376 A.2d 329, 333 (1977). In the absence of an express agreement, an individual does not assume the risk of harm arising from another's conduct unless he knows of the existence of the risk and appreciates its unreasonable character. 376 A.2d at 333; *D'Andrea v. Sears, Roebuck and Co.*, 109 R.I. 479, 487, 287 A.2d 629, 633 (1972). To decide whether an individual was aware of the risk and understood its character, we shall look to the record to ascertain what the particular individual in fact saw, knew, understood, and appreciated. *Kennedy v. Providence Hockey Club, Inc.*, R.I., 376 A.2d at 332; *D'Andrea v. Sears, Roebuck and Co.*, 109 R.I. at 487, 287 A.2d at 633. When a person voluntarily proceeds, knowing and appreciating the danger, he will be held to have assumed the risk incident to his conduct. *Baumler v. Narragansett Brewing Co.*, 23 R.I. 430, 434, 50 A. 841, 842 (1901).

■ Generally, the resolution of the issue whether a plaintiff assumed the risk of injury is for the trier of fact. If the facts suggest only one reasonable inference, however, the issue becomes a question of law for the trial justice and may be the basis of a directed verdict. *Iadevaia v. Aetna Bridge Co.*, R.I., 389 A.2d 1246, 1249 (1978).

■ Accordingly, in examining the record in the light most favorable to plaintiffs, we find that the evidence supports the trial justice's decision in granting Boden's motion for direction on the basis of the doctrine of assumption of the risk. Lillian herself testified that she had used the stairway on a daily basis for several years prior to the date of her fall. The record indicates that at all pertinent times there were no material changes in the condition of the stairway. Moreover, Lillian does not dispute that she knew of the absence of a handrail along the outside wall of the stairwell or that at a certain point in the stairway the treads became wedge–shaped and thus narrowed at the points closest to the inside handrail. In light of these facts and circumstances, we conclude that Lillian knew of the condition and structure of the stairs and that as a matter of law she knowingly assumed the ordinary risks associated with walking on the narrow portion of the treads, including the chance that she might slip and fall because of inadequate footing on the narrow portion of the treads. *Cf. Gatti v. World Wide Health Studios of Lake Charles, Inc.*, 323 So.2d 819, 822 (La. App.1975) (plaintiff charged as matter of law with assuming ordinary risks attending use of steam room with wet floor, which risks included chance of slip and fall); *Birdsall v. Counts*, 450 S.W.2d 136, 140–41 (Tex. Civ.App.1970) (plaintiff charged as matter of law with assuming ordinary risks attending use of stairway without handrail and in absence of adequate lighting, which risks included chance of slip and fall).

■ The plaintiffs argue, however, that Lillian did not voluntarily encounter the

---

**5.** The affirmative defense of assumption of risk must be pleaded and proved by a defendant. *Iadevaia v. Aetna Bridge Co.*, R.I., 389 A.2d 1246, 1249 (1978). The defendant Herbert Boden, Jr., raised the defense of assumption of risk in his answer.

aforementioned risks because there were no reasonable alternative means of reaching the twelfth floor coffee–break area. We do not dispute the principle that the doctrine of assumption of risk operates only when a plaintiff has voluntarily assumed an unreasonable risk that a defendant had created. *Littleton v. Western Union Telegraph Co.*, 442 F.2d 1169, 1171–72 (10th Cir. 1971); *Mizenis v. Sands Motel, Inc.*, 50 Ohio App.2d 226, 231–32, 362 N.E.2d 661, 664–65 (1975). If a plaintiff has voluntarily elected one of a number of alternatives, however, he will be held to have assumed the risks attending the choice of such alternative if the other conditions of the assumption–of–risk doctrine are present. *Pacific Portland Cement Co. v. Bellamy*, 187 F.2d 701, 703 (9th Cir. 1951); *Roberts v. Guillory*, 25 Cal.App.3d 859, 862, 102 Cal.Rptr. 134, 135 (1972).

In the case before us, Lillian had several options reasonably available to her. There is nothing in the record to indicate that Lillian was under any compulsion to use the coffee room during her break. To the contrary, her testimony indicates that the employees of the national bank could leave the Westminster Street building during their coffee or lunch breaks. This choice notwithstanding, Lillian elected to proceed to the coffee room. Furthermore, Lillian chose to walk on the inside portion of the stairway treads which she knew to be considerably narrower than the middle or outside portions of the treads.[6] In view of the evidence in the record, we cannot say that there were no reasonable alternatives open to her which would have helped her avoid the recognized risks involved in the use of the stairway. We are of the opinion that the trial justice was correct in granting defendant Boden's motion for direction on the basis of the doctrine of assumption of the risk.

## II

The plaintiffs next assert that the trial justice erred in granting the trust company's motion for direction. The trial justice found that at the time of Lillian's fall the trust company existed, if at all, as a shell corporation that did not have any assets and that did not own or otherwise have control over the Westminster Street building. The trial justice therefore saw no basis on which the trust company could be liable to plaintiffs.

The plaintiffs contend that in light of evidence they submitted tending to show that at all material times the trust company held record title to the Westminster Street building and that, as far as the Secretary of State was concerned, the trust company held an unrevoked legislative charter and was in good corporate standing, the trial justice's decision to grant a directed verdict for the trust company was erroneous.

The trust company presented on its behalf James Kelly, an attorney, who testified that the trust company and the national bank merged as of May 29, 1969. Furthermore, the exhibits introduced in connection with Mr. Kelly's testimony disclosed that on February 19, 1969, in accordance with 12 U.S.C.A. § 215a (West Supp. 1980), the trust company (then a state–chartered trust company) and the national bank (then a national banking association) entered into a merger agreement. Under the terms of the agreement the trust company was to merge with and into the national bank, subject to the approval of the Comptroller of the Currency. On May 26, 1969, the Comptroller of the Currency approved this agreement to be effective as of the close of business on May 29, 1969, some eighteen months before Lillian's fall.

The effect of a merger under 12 U.S.C.A. § 215a is set forth in subsection (e) thereof, which in pertinent part provides:

"The corporate existence of each of the merging banks or banking associations participating in such merger shall be merged into and continued in the receiv-

---

**6.** The record discloses that a service elevator also provided access to the twelfth floor. It is unclear, however, if this elevator was reasonably available to plaintiff Lillian L. Rickey at the pertinent time. We have therefore assumed, consistently with our standards governing review of directed verdicts, that the elevator was not available to her.

ing association and such receiving association shall be deemed to be the same corporation as each bank or banking association participating in the merger. All rights, franchises, and interests of the individual merging banks or banking associations in and to every type of property (real, personal, and mixed) * * * shall be transferred to and vested in the receiving association by virtue of such merger without any deed or other transfer."

The language of the second–quoted sentence conclusively supports the trial justice's finding that the trust company was a mere shell exercising no actual control or management over the real estate and therefore was not liable to the plaintiffs. On May 29, 1969, the effective date of the merger agreement, the national bank received any property interests that the trust company may have had, including the trust company's apparent title interests in the Westminster Street building, regardless of the absence of any deed or other transfer of title. The language of the first–quoted sentence does not change this result. That language is intended solely to preserve to a receiving association any previously existing rights of an individual merging bank, especially those rights exercised under fiduciary appointments of state courts. *See Fidelity–Baltimore National Bank v. United States*, 328 F.2d 953 (4th Cir.), *cert. denied*, 379 U.S. 823, 85 S.Ct. 48, 13 L.Ed.2d 34 (1964). Thus we conclude that the trust company had no duty to maintain the stairway on which Lillian fell and, therefore, could incur no liability for her injuries.

The plaintiffs' appeal is denied and dismissed, the judgments appealed from are affirmed, and the case is remanded to the Superior Court.

KELLEHER, Justice, with whom MURRAY, Justice, joins, dissenting.

I respectfully disagree with that portion of the Chief Justice's opinion which holds that the Rickeys' claim against Boden is barred by Mrs. Rickey's assumption of the risk. Assuming that Mrs. Rickey was well aware of the risk she incurred by using the stairway to the bank's twelfth floor, there is evidence in the record which would support a finding by the jury that Mrs. Rickey's options as to how she would arrive at the twelfth floor for her mid–morning coffee break were somewhat limited.

The trial justice, in directing the verdict, gave no reasons why he believed that Mrs. Rickey had assumed the risk. However, when he granted the new–trial motion, he observed that there was an alternate route available to Mrs. Rickey–the freight elevator.[7] In making this observation, the trial justice apparently overlooked Mrs. Rickey's testimony when she told the jury that one of her supervisors, the elevator starter, had told the operators that, if possible, they were not to use the freight elevator. Later in the trial, the building superintendent acknowledged that during the morning hours the freight elevator was "usually used to transport freight." This testimony would support a finding that, contrary to the trial justice's belief, Mrs. Rickey had little choice at coffee–break time. If she wished to enjoy a twelfth–floor sip of coffee, it would be necessary to take the elevator to the eleventh floor and from there ascend the curving staircase to the twelfth floor.

When the Chief Justice mentions an opportunity whereby Mrs. Rickey could leave the building and enjoy her coffee break elsewhere, he overlooks the fact that Mrs. Rickey's fall occurred in the midst of the 1971 winter. The record is completely barren as to what were the meteorological conditions at the time of her fall, to wit, January 22, 1971. The defense presented no evidence as to whether on that particular day it was cold, warm, raining, snowing, or whether the sidewalks were sheathed with ice.

I would vote for a new trial since in his grant of the conditional new–trial motion, the trial justice found that there was an absence of proof of the lack of a railing on the right–hand wall being the proximate

7. The freight elevator was the only elevator that ascended to the twelfth floor.

cause of her injury. He also emphasized that, in his opinion, the jury verdict was the result of sympathy generated by the fact that Mrs. Rickey at trial was the victim of a disease which was totally unrelated to her fall. There is evidence in the record which seems to support both conclusions. If such a new trial were to become a reality, the litigants might then present evidence as to whether Boden, since he is a corporate officer, should be treated as part of the corporate alter ego and thus be immune from suit or as a co–employee who can be accountable in a suit against him for damages. *See Clark v. Jackson,* 455 F.Supp. 537 (D.N.H.1978); *Stevens v. Lewis,* 118 N.H. 367, 387 A.2d 637 (1978); *Steele v. Eaton,* 130 Vt. 1, 285 A.2d 749 (1971); *Garchek v. Norton Co.,* 67 Wis.2d 125, 226 N.W.2d 432 (1975); Annot., 21 A.L.R.3d 845, §§ 3(a), 4, 6, and 8 (1968).

DORIS, J., participated in all proceedings but deceased prior to the filing of this opinion.