George MARTINS et al.

v.

OMEGA ELECTRIC CO., INC. et al.

No. 95–676–Appeal.

Supreme Court of Rhode Island.

April 22, 1997.

Fred L. Mason, Jr. and Mark Nugent, Providence, for Plaintiff.

Michael G. Sarli and Stuart D. Hallagan, III, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER and FLANDERS, JJ.

## OPINION

PER CURIAM.

This matter came before the Supreme Court for oral argument on January 24, 1997, pursuant to an order directing both parties to show cause why the issues raised in this appeal should not be summarily decided. The plaintiffs, George Martins (Martins), his wife, Linda, and their children, Susan and Clothilde, appeal from a summary judgment in Superior Court in favor of the defendants, Omega Electric Company Co., Inc. (Omega), H.V. Collins Company (Collins), Morse Diesel, Inc. (Morse), and John Doe. After hearing the arguments of counsel and reviewing their memoranda, we perceive no cause and will therefore summarily decide this matter.

Martins was employed by a subcontractor engaged to do carpentry work in the Citizens Plaza building in Providence. On April 6, 1990, while doing carpentry work, he came into contact with an electrical wire, sustained a severe shock, and was injured. He commenced a civil action in the Superior Court, seeking damages from Omega, the subcontractor responsible for installing the electrical wiring, and Collins and Morse, the general contractors.[1]

In pretrial-deposition testimony, Martins stated that the incident giving rise to his injuries occurred while he was in the process of repairing a ceiling. He testified that the electrical wiring, or flex conduit, suspended from the ceiling was improperly attached to temporary light fixtures and that when he attempted to move the ensemble, he was severely injured by an electrical charge.[2] He testified that before being injured, he had several times that morning come in contact with other flex-conduit wires and felt no electrical current. He also noted that earlier on the day of his injury he had asked an electrician employed on the job site to move some of the wiring, and the electrician refused, citing the wiring's high voltage.[3] Martins

also stated that he had encountered similar flex-conduit types of wiring at other job sites and that despite being aware of the electrical voltage it conveyed, he had often handled flex-conduit wiring without suffering any electrical shock. In concluding the deposition, he was asked by defense counsel whether "temporary wiring and stuff like that" could be dangerous and result in an electrical shock. To that rhetorical question, Martins answered in the affirmative. Seizing upon that answer, defendants then filed a motion for summary judgment, asserting that Martins had assumed the risk of his injury by touching the flex-conduit wire.

Martins later supplemented his pleadings by affidavit, submitted after his deposition testimony, in which he repeated many of the same assertions made during his deposition, adding, however, that he "was not afraid of moving the metal flex conduit * * * since [he] thought that the wiring was insulated, which prevents the risk of an electrical shock."

A Superior Court motion justice, hearing defendants' motion for summary judgment, agreed with defendants' contention that Martins had "assumed the risk of electrical shock" and granted defendants' motion for summary judgment. Martins appealed to this Court.

■ Martins contends that the trial justice erred in granting summary judgment. He contends that the case file records and his affidavit in opposition to the defendants' motion raised material issues of fact concerning his subjective knowledge and apprehension that the particular flex-conduit wire in question, if touched by him, would cause him to sustain an electrical shock and injury.

The defendants, on the other hand, submit that the motion justice properly granted summary judgment. They contend that Martins's affidavit was merely an attempt to create a "sham" factual issue in order to

1. Martins's wife and children sought damages for loss of services.

2. This wiring supplies the power necessary to illuminate the ceiling-light fixtures and is encased in flexible metal armor, hence, the term "flex conduit."

3. Martins offered the explanation that the electrician would not move the wires, not out of fear of electrocution, but because he would not be paid extra for doing so.

preclude summary judgment and should not be considered by this Court in our review of this appeal. In particular, defendants point to that portion of Martins's affidavit where he states that he "was not afraid of moving the metal flex conduit * * * since [he] thought that the wiring was insulated, which prevents the risk of an electrical shock." This statement, argues defendants, contradicted Martins's deposition testimony in that Martins never spoke of the flex conduit's insulating features, and, in fact, admitted to knowing that temporary wiring posed a risk of electrical shock. Because of this inconsistency, defendants urge us to disregard Martins's affidavit.

■■■ The principles governing the doctrine of assumption of the risk are well settled. "In the absence of an express agreement, an individual does not assume the risk of harm arising from another's conduct unless he [or she] knows of the existence of the risk and appreciates its unreasonable character." *Rickey v. Boden*, 421 A.2d 539, 543 (R.I.1980). In determining whether an individual has assumed the risk of harm, this Court examines the record to learn what the injured party "saw, knew, understood, and appreciated." *Id.* This is a subjective standard, keyed solely on the observations and understandings of the plaintiff at the time of injury. *Filosa v. Courtois Sand and Gravel Co.*, 590 A.2d 100, 103 (R.I.1991). If it can be determined that the individual voluntarily proceeded to engage in a certain course of conduct, despite knowing and appreciating the danger involved, that individual will be deemed to have assumed the risk of injury and not be entitled to relief. *Rickey v. Boden*, 421 A.2d at 543. Even though this last inquiry is generally left to the trier of fact, if

the facts, however, suggest only one reasonable inference, the issue of assumption of the risk then becomes a question of law for the trial justice. *Id.*

Before we embark upon a review of the case file record to determine whether Martins subjectively "saw, knew, understood, and appreciated" the risk of electrocution when he touched the flex-conduit wire, we make the initial determination that, in reaching our conclusion, Martins's affidavit should not be disregarded. Upon comparison of Martins's deposition and his affidavit, we cannot conclude that the latter is so contradictory as to warrant its exclusion from our consideration. The questions posed to Martins at the deposition were not unambiguous. His affidavit, we believe, attempted to clarify several of the answers Martins gave earlier at the deposition, particularly with respect to his knowledge of the risk of shock posed by "temporary wiring and stuff like that."[4]

Having made this initial determination, we now review the entire record before us and conclude that Martins did not, as a matter of law, assume the risk of electrocution by handling the flex-conduit wire. Rather, we are of the opinion that Martins's subjective knowledge and apprehension of danger is a question best left answered by the trier of fact.

Martins's deposition and his affidavit clearly reveal that he had encountered flex-conduit wiring at many previous job sites and that he had handled such wiring before without being shocked and injured. In addition, on the morning of the accident Martins had safely come into contact with the flex-conduit wiring several times before he eventually suffered his injury. Further, Martins stated

---

4. The colloquy between defendants' counsel and Martins occurred as follows:

"Q. And I take it you knew that electricity was dangerous?
"A. Yes.
Mr. Mason (Martins' counsel): Objection.
"Q. And you knew such things like temporary wiring and stuff like that could be dangerous, correct?
"A. Right.
"Q. You knew the danger was that if you touched temporary wiring, you could get a shock?

"Mr. Mason: Objection.
"A. There was chances."
We conclude that Martins's affidavit, particularly the portion wherein he states that he "was not afraid of moving the metal flex conduit * * * since [he] thought that the wiring was insulated, which prevents the risk of an electrical shock," does not contradict the testimony cited above. The questions presented above are ambiguous, and the affidavit goes no further than to clarify Martins's position with respect to his knowledge and apprehension of the danger presented by the flex conduit, which, as stated in his affidavit, he believed to be part of the *permanent* wiring.

in his affidavit that he believed that the insulated protective metal armor of the flex conduit would prevent any risk or danger of electrical shock. That belief and assumption would indeed be reasonable unless one were to assume that Martins would deliberately take hold of a wire that would send 277 volts surging through his body. Those facts alone, viewed in the light most favorable to Martins, *Russian v. Life–Cap Tire Services, Inc.,* 608 A.2d 1145, 1147 (R.I.1992), certainly raised a question of material fact in regard to whether Martins "saw, knew, understood, and appreciated" the risk of electrocution presented by the flex conduit or instead believed that the insulated wiring conveying 277 volts of electrical charge presented no danger.

 We continue to adhere to the principle that the remedy of summary judgment " 'is a drastic remedy and should be cautiously applied.' " *Boland v. Town of Tiverton,* 670 A.2d 1245, 1248 (R.I.1996); *Hydro–Manufacturing, Inc. v. Kayser–Roth Corp.,* 640 A.2d 950, 954 (R.I.1994). Our review of the propriety of a summary judgment order is the same as that of the motion justice who granted the moving party's motion. We must look to "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," submitted by the parties and determine whether a genuine issue of material fact exists. Super. R. Civ. P. 56(c).

Applying this standard of review to the record before us, we conclude that the facts, when viewed in the light most favorable to Martins, suggest that more than one reasonable inference may be drawn from Martins's conduct and that, therefore, his subjective apprehension of danger was a question to be decided by the trier of fact and not by the motion justice as a matter of law. *Smith v. Tully,* 665 A.2d 1333, 1335 (R.I.1995). Since a genuine issue of material fact existed, the motion justice erred in granting the defendants' motion for summary judgment.

For the foregoing reasons, the appeal is sustained and the summary judgment appealed from is vacated. The papers of this case may be remanded to the Superior Court for further proceedings consistent with this opinion.